Argued and submitted April 4, reversed and remanded in part; otherwise affirmed July 10, respondents Lane County's and City of Eugene's petition for reconsideration filed July 23 allowed by opinion October 2, 2002
See 184 Or App 111 (2002)

Byron A. STONE
and Wanda Lou Stone,
Personally and as Guardian Ad Litem for
Jacqueline K. Stone,
*Appellants,*

*v.*

Dean FINNERTY,
City of Cottage Grove, Lane County,
City of Eugene,
and Central Lane Interagency Narcotics
Enforcement Team (INET),
*Respondents,*

*and*

Jeff CARLEY,
Eric Langford, Robert McManus, Peter Kerns,
Rick Siel, Jim Hill, Benton County, and John Does 1-6,
*Defendants.*

16-96-09442; A104429

50 P3d 1179

David C. Force argued the cause and filed the briefs for appellants.

John F. Kilcullen argued the cause for respondents Dean Finnerty and City of Cottage Grove. On the brief were Larry A. Brown, and Brown, Roseta, Long, McConville, Kilcullen & Carlson.

Jens Schmidt argued the cause for respondents Lane County, City of Eugene and Central Lane Interagency Narcotics Enforcement Team (INET). With him on the brief was Harrang, Long, Gary, Rudnick, P.C.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.*

EDMONDS, P. J.

---

* Armstrong, J., *vice* Byers, S. J.

### EDMONDS, P. J.

The plaintiffs in this civil action are Byron and Wanda Stone and their daughter Jacqueline Stone.[1] They appeal from a judgment of the trial court in favor of defendants Dean Finnerty, the City of Cottage Grove, Lane County, the City of Eugene, and the Central Lane Interagency Narcotics Enforcement Team (INET). The other defendants below are not parties to this appeal. The trial court granted summary judgment under ORCP 47 to the City of Eugene, Lane County, and INET on all claims against them. It denied summary judgment motions brought by the City of Cottage Grove and Finnerty, and the case proceeded to trial as to them. After plaintiffs presented their case-in-chief, Finnerty and the City of Cottage Grove moved for directed verdicts under ORCP 60, which the trial court granted. Plaintiffs appeal, and we reverse in part and otherwise affirm.

Plaintiffs' claims against the various defendants arise from the execution of a search warrant by the combined police forces of the above public bodies. The officers obtained the warrant on the basis of an affidavit prepared by Finnerty, who averred that controlled substances would be found on the property where plaintiffs were both employed. Finnerty, a City of Cottage Grove detective, was not present when the warrant was executed. However, other officers from the City of Cottage Grove participated in the raid. Plaintiffs worked in a large residence on the property and lived in a smaller residence, also on the property. The warrant authorized the search of both the larger residence and plaintiffs' residence, as well as various other outbuildings. It also authorized the search of all occupants on the property.

When the warrant was executed, approximately 50 armed officers from the various agencies entered the property, secured the various buildings, and went into the large residence where Byron Stone was working. A then-unidentified officer handcuffed him and detained him for several hours while a search of the premises occurred. Wanda Stone

---

[1] Although Jacqueline Stone is listed as an appellant, no assignment of error concerns any claim brought on her behalf. For purposes of clarity, we do not include her when we refer to "plaintiffs" in the remainder of the opinion.

arrived at the larger residence during the search and was also detained and searched. During the execution of the warrant, Byron allegedly received physical injuries to his back from rough treatment by the police. As a result of the raid, he also allegedly suffered an aggravation of an existing post-traumatic stress disorder (PTSD), which had, as its underlying cause, events from his previous military service in Vietnam. Wanda and Byron were both eventually released by the police and were allowed to gather a few personal belongings from their residence before being directed to leave the premises by the police.

Byron subsequently filed claims for his back injury and for his PTSD with his employer's workers' compensation insurer, alleging that those injuries suffered during the raid were compensable and work-related.[2] The insurer initially denied that either condition was compensable but then later rescinded its denial of the back injury claim and entered into a claims disposition agreement with Byron on that claim, for which it paid a total of $5,000. The PTSD claim was later resolved by a "disputed claim settlement" between Byron and the insurer, in which the parties acknowledged their dispute about the compensability of the PTSD claim. In the agreement, Byron agreed to give up any "further entitlement to compensation or any other legal right related to the denied treatment or conditions" in exchange for $1,000.

Later, plaintiffs filed this action. In their complaint, they allege that the City of Eugene, Lane County, and the City of Cottage Grove are liable for damages arising out of alleged false imprisonments, an alleged battery of Byron, and alleged violations of 42 USC section 1983 that occurred during the raid. As to the City of Eugene and Lane County, plaintiffs assert that their officers unlawfully confined them for a period of 9 to 12 hours while they were executing the search warrant.[3] Additionally, plaintiffs alleged that INET and Finnerty are liable to them for damages for violations of 42 USC section 1983. Plaintiffs assign error to the trial court's summary judgment and directed verdict rulings.[4]

---

[2] Apparently, Wanda did not file a workers' compensation claim.

[3] Plaintiffs contend that, even if the search warrant authorized some period of detention, the officers executing the warrant acted beyond what was authorized.

[4] On appeal, plaintiffs do not raise as error the dismissal of their section 1983 claims against the City of Eugene and Lane County.

In their first assignment of error, plaintiffs contend that the court erred in granting summary judgment to the City of Eugene and to Lane County on their claims of battery and false imprisonment. The trial court held that Byron's claim for battery and plaintiffs' claims for false imprisonment were "covered" by the workers' compensation law, and that those defendants were therefore immune from liability under ORS 30.265(3)(a).

ORS 30.265(3)(a) provides:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"(a) Any claim for injury to or death of any person covered by any workers' compensation law."

Plaintiffs argue in substance that, because the alleged emotional injuries and injuries to reputation that they suffered during the raid are not compensated by workers' compensation law, it follows that, within the meaning of ORS 30.265(3)(a), their claims for injury in the action are not "covered" for purposes of immunity from liability.

We begin our analysis by pointing out that workers' compensation "coverage" of a "claim," for purposes of ORS 30.265(3)(a), is a different question from the "compensability" of a particular "injury" under ORS 656.005(7)(a).[5] In *Moustachetti v. State of Oregon*, 319 Or 319, 877 P2d 66 (1994), the court held that, in determining whether a particular claim is covered under workers' compensation law for purposes of ORS 30.265(3)(a), the proper inquiry is to discern the "legal injury" (in that case, wrongful termination from employment) at issue. A "legal injury" at common law is any harm or wrong to absolute rights for which a cause of action

---

[5] In *Barkley v. Corrections Div.*, 111 Or App 48, 51, 825 P2d 291 (1992), we said, "[p]laintiff is covered by workers' compensation law, for purposes of ORS 30.265(30)(a), if she suffered a compensable injury." We also said, "[b]ecause plaintiff's injury arose out of and in the course of her employment and necessitated treatment, it was compensable under the Workers' Compensation Law. Accordingly, defendants are immune from tort liability. ORS 30.265(3)(a)." *Id.* at 53. To the extent that our language in that opinion suggests that compensability of work-related injuries will always trigger the immunity provided by ORS 30.265(3)(a), we disavow that interpretation. Immunity under the statute depends on whether the legal injury, as distinguished from the physical or mental injury, is "covered" by the workers' compensation law, as explained below.

existed. *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001). The words "legal injury" refer to the gravamen of a claim and not to the kinds of injuries or damages for which a plaintiff seeks recompense. Contrary to plaintiffs' arguments, "coverage" as contemplated by ORS 30.265(3)(a) does not depend on the "type or severity of the damages suffered as a result of" the legal injury. *Moustachetti*, 319 Or at 325. Rather, immunity under the statute is dependant on the nature of the "legal injury." *Id.* Accordingly, our inquiry is whether plaintiffs' false imprisonment and battery claims allege a "legal injury," or a harm or wrong to an absolute right, that is covered by the workers' compensation law.

"The gravamen of the claim [of false imprisonment] is 'the unlawful imposition of restraint on another's freedom of movement.'" *Buckel v. Nunn*, 133 Or App 399, 405, 891 P2d 16 (1995), *quoting Walker v. City of Portland*, 71 Or App 693, 697, 693 P2d 1349 (1985). To establish such a claim,

"(1) [the] defendant must confine [the] plaintiff; (2) [the] defendant must intend the act that causes the confinement; (3) [the] plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Hiber v. Creditors Collection Service*, 154 Or App 408, 413, 961 P2d 898, *rev den* 327 Or 621 (1998).

It is not necessary that the party causing the imprisonment use violence or force or even touch the body of the imprisoned person. *Christ v. McDonald,* 152 Or 494, 501, 52 P2d 655 (1935). Rather,

"[f]alse imprisonment consists in the unlawful restraint against his will of an individual's personal liberty or freedom of locomotion. The gist of false imprisonment is unlawful detention." *Id.*

The workers' compensation statutory scheme operates as a substitute for civil *claims* that an employee could assert against his or her employer in an action at common law and provides liability "coverage" against the risks that arise from those kinds of claims. *Hale v. Port of Portland*, 308 Or 508, 521, 783 P2d 506 (1989) ("[T]he Oregon Legislature * * * eliminated the haphazard system of liability of employers to some employees for some injuries occurring under a

limited number of circumstances, and replaced it with a system that made employers liable for the medical expenses of their injured workers without regard to fault."); *Errand v. Cascade Steel Rolling Mills, Inc.*, 320 Or 509, 514, 888 P2d 544 (1995) (explaining that the workers' compensation system replaced the civil remedy system with a *quid pro quo* that gives workers a remedy without proving fault, in exchange for the exclusivity of that remedy). The workers' compensation law defines "compensability" in terms of the work-related injuries, diseases, disabilities, conditions, and/ or death for which an employee or his or her representatives can recover. For example, ORS 656.005(7)(a) provides, in part, that a "compensable injury" under workers' compensation law is:

> "An accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death[.]"

As we have said, the word "covered" in ORS 30.265(3)(a) does not refer to the kinds of injuries, mental or physical, for which an employee can be recompensed under the workers' compensation law. Rather, it refers to the types of *claims for legal wrongs* that were included in the *quid pro quo* substitution of workers' compensation coverage for common-law claims that could have been brought against an employer by employees for work-related harms. Understood in that light, the workers' compensation law provides no "coverage" for the risk of claims like plaintiffs' false imprisonment claim, or the "legal harm" to the freedom of locomotion, even though defendants' conduct may also have caused compensable physical or mental injuries.[6] Rather, ORS

---

[6] Our conclusion is based on Oregon statutory language but finds support in the case law of a large majority of other jurisdictions. *See, e.g., Foley v. Polaroid Corp.*, 400 Mass 82, 508 NE 2d 72 (1987). In *Foley*, the court held that the inquiry should be "structured in terms of what claims an employee could assert against his employer in an action at law—not in terms of the injuries for which the employee could seek recompense." 400 Mass at 93. Most jurisdictions that have considered the matter have concluded that false imprisonment claims are not barred by workers' compensation exclusivity provisions, for various reasons. *Fermino v. Fedco, Inc.*, 30 Cal Rptr 2d 18, 872 P2d 559 (1994); *see also Adams v. National Bank of Detroit*, 444 Mich 329, 508 NW 2d 464 (1993), *quoting Battista v. Chrysler Corp.*, 454 A2d 286, 289 (Del 1982) ("The exclusive remedy provision of the workers' compensation act bars recovery for physical or mental injury resulting from accident,

30.265(3)(a) provides immunity to public bodies against civil claims that the legislature intended to replace with a workers' compensation remedy.

■ Our conclusion is supported by the reasoning of *Moustachetti*. In that case, the court explained that the plaintiff's discharge from employment was a different legal "injury" from his "compensable injury" under the workers' compensation law that required medical services or resulted in disability. *Id.*, 319 Or at 325. The same reasoning applies here. The claim for interference with plaintiffs' liberty interests is a claim for a "different 'legal injury' " from the kinds of claims for harm covered by workers' compensation law. The trial court erred when it held that Lane County and the City of Eugene were entitled to immunity against plaintiffs' false imprisonment claims under ORS 30.265(3)(a).[7]

■ ■ We turn to the issue of immunity regarding Byron's battery claim under ORS 30.265(3)(a). Unlike the unlawful restraint or detention that is the gist of a false imprisonment claim, the gravamen or legal injury of a battery claim is a nonconsensual or offensive touching. *Bakker v. Baza'r, Inc.*, 275 Or 245, 249, 551 P2d 1269 (1976). The workers' compensation law does operate as a substitute for the common law regarding claims for that kind of legal harm, if the injury or condition suffered as a result thereof is compensable. *See, e.g., Redman Industries, Inc. v. Lang*, 326 Or 32, 943 P2d 208 (1997); *Phil A. Livesley Co. v. Russ*, 296 Or 25, 32, 672 P2d 337 (1983); *Carr v. US West*, 98 Or App 30, 779 P2d 154, *rev den* 308 Or 608 (1989); *Robinson v. Felts*, 23 Or App 126, 541 P2d 506 (1975). Here, plaintiffs concede that

and does not bar claims for invasion of a worker's interest in being free from interference with other interests, such as injuries to reputation resulting from defamation. 'Other jurisdictions have recognized that not all harms occasioned by the employment relationship qualify as compensable injuries under the Act. Such harms include: injuries to reputation resulting from libel, malicious prosecution and false imprisonment, invasion of privacy and false arrest.' ").

[7] The fact of plaintiffs' settlement with the insurer on Byron's PTSD claim does not have any import in this determination. The application of ORS 30.265(3)(a) depends on the legal determination of whether an injury is "covered by" workers' compensation law. An insurer's willingness to pay a claimant in a disputed claims settlement has nothing to do with the legal determination about whether immunity exists under the statute, a question that is dependent on legislative intent.

"[t]he physical component of plaintiff's injury to his back caused by the battery, was 'covered' by workers' compensation law. Plaintiff filed a claim for that injury, it was accepted, and compensation was paid."

Nonetheless, they contend that we should segregate the physical component of Byron's "injury" from the nonphysical elements of his damages (mental suffering, loss of employability, shame, and humiliation) and afford him a civil remedy against defendants in addition to workers' compensation for those damages. Otherwise, they assert that, if the city and the county are immune from liability arising out of the battery, then Byron is deprived of "the remedies in general damages for the injuries done him in his person and reputation," in violation of Article I, section 10, of the Oregon Constitution.[8]

Again, we disagree with plaintiffs' proposal to segregate the types of damages so as to avoid the immunity provided by ORS 30.265(3)(a). As we indicated earlier in this opinion, the *Moustachetti* court expressly disavowed using such an approach. 319 Or at 325. Rather, the proper focus is to inquire whether the workers' compensation law operates as a substitute for, or "covers," the type of common-law claim arising out of the legal injury or wrong that occurred. As we pointed out above, the universe of workers' compensation law includes claims for work-related offensive or harmful contacts with the person. We conclude therefore that the trial court did not err in granting summary judgment to Lane County and the City of Eugene on Byron's battery claim, unless, as plaintiffs contend, such an application of ORS 30.265(3)(a) would violate Article I, section 10, of the Oregon Constitution.

Plaintiffs rely on *Neher v. Chartier*, 319 Or 417, 879 P2d 156 (1994), in support of their constitutional argument.[9] In *Neher*, the Supreme Court held that the application of

---

[8] Article I, section 10, provides, in part:

"Every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

[9] *See Storm v. McClung*, 334 Or 210, 334 P3d 476 (2002) (partially overruling *Neher* and distinguishing statutory wrongful death actions from common-law actions).

ORS 30.265(3)(a) to an action brought by the parents of a deceased worker was unconstitutional because it left the parents without a substantial remedy for the legal wrong that they had suffered. Plaintiffs draw an analogy between the parents' circumstances in *Neher* and the effect of ORS 30.265(3)(a) on Byron's ability to seek redress for his humiliation and harm to reputation. In *Brentano v. Marion County*, 150 Or App 538, 542, 946 P2d 705 (1997), we considered the effect of the holding in *Neher*. In that case, the plaintiff was an employee of a private employer, and he had been injured on the premises of the defendant county. He filed a workers' compensation claim and, as a result, received $35,000 in benefits. He then initiated an action against the county. The trial court granted summary judgment pursuant to ORS 30.265(3)(a), and the plaintiff appealed. He argued that the effect of *Neher* was to invalidate ORS 30.265(3)(a) in its entirety. We rejected that argument, observing:

> "The court in *Neher* did not decide that ORS 30.265(3)(a) is facially invalid. The court expressly limited its reasoning and its holding to the facts of the case: The statute was held unconstitutional as applied to the plaintiff in *Neher* because the statute left *that plaintiff* wholly without a remedy. The same cannot be said in this case, in which plaintiff has received $35,000 in workers' compensation benefits." *Brentano*, 150 Or App at 542.

We concluded that the $35,000 in workers' compensation benefits was a "substantial remedy." *See Hale*, 308 Or at 523 (holding that Article I, section 10, is not violated when the injured party is left with a substantial remedy).

Our holding in *Brentano* was followed by our decision in *Gunn v. Lane County*, 173 Or App 97, 20 P3d 347 (2001). In *Gunn*, the plaintiff received workers' compensation benefits after her car was hit by a Lane County vehicle. In a subsequent action against the county, she contended that the workers' compensation benefits that she had received did not compensate her for all of her injuries, including the loss of future earnings, pain and suffering, facial scarring, and disfigurement. Again, we concluded that the workers' compensation statutes afforded the plaintiff a substantial remedy, and therefore the application of ORS 30.265(3)(a) did not violate Article I, section 10, despite the fact that certain types of

damage were not compensated. Our decisions in *Brentano* and *Gunn* answer plaintiffs' constitutional challenge to ORS 30.265(3)(a). So long as Byron is afforded a substantial remedy for his *legal injury* under the workers' compensation law, the application of ORS 30.265(3)(a) does not violate Article I, section 10.[10]

Nonetheless, plaintiffs point to the ruling in *Smothers*, 332 Or 83, in support of their argument. Plaintiffs assert:

> "As that decision makes clear, the legislature has no power to enact statutes which deprive an injured person of all remedies by extending the exclusive remedy bar of workers' compensation claims to injuries which are not compensable nor remedied by workers' compensation."

In *Smothers*, the worker's claim was denied because of his failure to prove that the work-related incident from which the claim arose was the major contributing cause of the condition for which he sought compensation. He then brought a negligence action against his employer. The Supreme Court held that, as applied to the plaintiff, the exclusive remedy provision of the workers' compensation law, ORS 656.018 (1999), was unconstitutional under Article I, section 10. It ruled,

> "Having alleged an injury of the kind that the remedy clause protects and having demonstrated that there was no remedial process available under present workers' compensation laws, plaintiff should have been allowed to proceed with his negligence action." *Smothers*, 332 Or at 136.

In our view, the facts in *Smothers* render it inapposite to the facts underlying Byron's battery claim. The most significant fact in *Smothers* was that the plaintiff had no remedy whatsoever under the workers' compensation law. As we and the Supreme Court have said, Article I, section 10, is concerned with the availability of a remedy for a "legal injury." In this case, the workers' compensation law provides

---

[10] Plaintiffs do not argue that Byron's receipt of benefits from the filing of his workers' compensation claims did not afford him a "substantial remedy." Rather, their argument is limited to the contention that, because Byron has no redress for his humiliation and reputational injuries, it follows that ORS 30.265(3)(a) cannot be constitutionally applied to him.

a remedy to Byron for his work-related legal injury arising out of the battery, and the remedy in this case is a substantial one. Plaintiffs' attempt to reason that Byron is deprived of an available remedy because the workers' compensation law does not provide coverage for his other alleged harms runs afoul of the understanding that Article I, section 10, focuses on substantial remedies for types of "legal injuries" rather than on the types of physical, mental or other harm suffered. We conclude that the application of ORS 30.265(3)(a) to the facts underlying Byron's battery claim is constitutional under Article I, section 10, and that the trial court did not err in granting summary judgment to Lane County and the City of Eugene on that claim.

In plaintiffs' second assignment of error, they contend that the trial court erred in granting summary judgment to defendant INET. The trial court granted the motion without expressing the basis on which it ruled. Based on the arguments raised below, the court could have ruled that plaintiffs failed to prove that INET was subject to legal action as a "person" under 42 USC section 1983 or failed to prove that INET had a policy of violating constitutional rights through the actions of its officers. Affirming the trial court on either ground disposes of the issue.

We begin our analysis with the language of the governing statute. 42 USC section 1983 provides, in part:

"Every *person* who, under color of any statute, ordinance, regulation, *custom or usage*, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." (Emphasis added.)

Under section 1983, a plaintiff's entitlement to a remedy depends on whether the plaintiff's constitutional rights have been violated by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]" *Monell v. Dept. of Soc. Serv.*, 436 US 658, 694, 98 S Ct 2018, 56 L Ed 2d 611 (1978). Under United States Supreme Court decisions interpreting section 1983, there are

two separate available means to establish that an official governmental policy violates the law. The first is by proving that there are "formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembauer v. City of Cincinnati*, 475 US 469, 480-81, 106 S Ct 1292, 89 L Ed 2d 452 (1986). The second is to show that "a decision to adopt [a] particular course of action * * * properly made by that government's authorized decision makers" violated the plaintiff's rights. *Id.* at 481. Under either alternative, it is insufficient to show that a particular official, even a policymaking official, merely exercised his or her discretion in a manner that resulted in a violation of the plaintiff's rights under the statute. *See Oklahoma City v. Tuttle*, 471 US 808, 822-24, 105 S Ct 2427, 85 L Ed 2d 791 (1985). Rather, a plaintiff must demonstrate "a deliberate choice to follow a course of action * * * made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembauer*, 475 US at 483.

 Here, plaintiffs' argument focuses on the intergovernmental agreement that created INET as the basis for their assertion that INET has a policy to violate constitutional rights for which section 1983 grants a remedy. According to plaintiffs, the agreement delegates to Kerns, a City of Eugene police officer and the commander of INET, unfettered discretion to exert any amount of force on citizens, regardless of the reasonableness of such force. Plaintiffs produced the following evidence at the summary judgment hearing in support of that assertion: (1) the INET organizational agreement showing (a) the relationship between the participating police agencies and (b) the supervisory control of Kerns over the INET team on the day of the raid; (2) the records of the various agencies involved in the raid as to what occurred; and (3) deposition testimony from various officers describing their roles in the raid. In particular, plaintiffs point to a deposition statement by Kerns that

"INET is supervised by a City of Eugene police sergeant, who operates under the rules and policies of the Eugene Police Department. When an INET search warrant is executed, it is done so within those guidelines."

Plaintiffs conclude that, because the police reports about the raid demonstrate that the officers involved used unreasonable force, and because Kerns followed the rules and policies of the City of Eugene police department in carrying out the raid, it follows that INET's policies authorized the use of unreasonable force during the raid. As to discretionary decisions, plaintiffs say, "The customs and policies of INET during 'operational activities' are whatever [Kerns] or his successors say they are at any given moment."

Plaintiffs' arguments prove too much in light of the evidence they offer. Nothing in their evidence establishes a custom or policy of INET that, when followed, resulted in the violation of plaintiffs' constitutional rights. Even if unreasonable force was used during the execution of the search warrant, it cannot be inferred from that fact that the officer using the excessive force was acting pursuant to an established policy or pursuant to a deliberate decision by a policy-making official. At most, the portion of testimony from Kerns relied on by plaintiffs establishes that the guidelines for the execution of the warrant are the guidelines used by the City of Eugene Police Department. However, nothing in the summary judgment record demonstrates that the city's policy, formal or otherwise, authorizes the use of unreasonable force in the execution of search warrants or that INET, by adopting the city's policies, has directed or authorized its participants to use unreasonable force. Finally, plaintiffs' focus on the discretion given to Kerns is misplaced. As the holding in *Pembauer* instructs, it is insufficient under 42 USC section 1983 to show merely that Kerns had a great amount of discretion in the exercise of his functions as supervisor of INET. Rather, to preclude summary judgment, plaintiffs are required to offer some evidence, direct or circumstantial, from which it could be inferred that the city, INET, or Kerns made a deliberate policy decision that the officers should use unreasonable force while executing a search warrant. Even after plaintiffs' evidence is given the benefit of all reasonable inferences, it fails to satisfy that requirement. Consequently, the trial court did not err in granting summary judgment to INET.

In plaintiffs' third assignment of error, they argue that the trial court erred in granting directed verdicts to

Finnerty and to the City of Cottage Grove on plaintiffs' section 1983, battery, and false imprisonment claims against the city and on plaintiffs' section 1983 claims against Finnerty. We start with the claims against the City of Cottage Grove and begin our analysis by noting that the City of Cottage Grove is immune from liability on Byron's battery claim under ORS 30.265(3)(a) for the reasons previously expressed regarding defendants Lane County and the City of Eugene. Because battery is a claim of "legal injury" that is covered by the workers' compensation law, the trial court could not have erred in granting a directed verdict under the statute. Second, in response to the city's motion for a directed verdict on the section 1983 claim, the court asked plaintiffs what evidence they had adduced showing that the city had a custom or policy of delegating authority to Finnerty to make false allegations in affidavits in order to obtain search warrants. Plaintiffs' counsel conceded to the trial court that they had no such evidence.[11] As we held regarding plaintiffs' second assignment of error, evidence of a governmental policy decision to engage in conduct that violates constitutional rights is a prerequisite to a remedy under section 1983. Plaintiffs' concession to the trial court forecloses their arguments regarding their section 1983 claims against the City of Cottage Grove, in light of our previous ruling.

Accordingly, we turn to the remaining claim against the City of Cottage Grove for false imprisonment. As we have held regarding the City of Eugene and Lane County, ORS

---

[11] The following discussion occurred during the City of Cottage Grove's motion for directed verdict:

"The Court: Paragraph 18 of your complaint says: At all material times Defendant City of Cottage Grove had a custom or policy of delegating to Defendant Finnerty the authority under color of law to make false allegations under oath by affidavit in support of search warrants, and since January 25, 1995, Defendant City has ratified and adopted all conduct of Defendant Finnerty as alleged herein as consistent with its policies and customs. And I've heard no proof of any policy or custom delegating those things to Officer Finnerty.

"[Plaintiffs' counsel]: And I cannot point you to any such proof.

"The Court: And that certainly is part and parcel of your claim against the City.

"[Plaintiffs' counsel]: Yes.

"The Court: The motion has to be granted as to the City and the 1983 claim."

30.265(3)(a) does not provide immunity to the city for plaintiffs' false imprisonment claims because loss of the freedom of movement or locomotion is not the type of legal injury that the workers' compensation law is intended to address. On appeal, plaintiffs allege that the City of Cottage Grove is liable for false imprisonment on two theories. They contend that Finnerty knowingly made false statements in the supporting affidavit when it was foreseeable that the warrant's execution would result in a "false" imprisonment, *i.e.*, false imprisonment through "instigation." They also argue that they were detained longer than necessary at the scene of the raid when the warrant was executed by officers who included City of Cottage Grove officers. Our review of the trial court record reveals that plaintiffs did not raise the latter issue to the trial court at the time defendants moved for a directed verdict.[12] Consequently, the issue of whether Cottage Grove police officers participated in a detention that continued longer than that authorized by the warrant is unpreserved for purposes of appeal, ORAP 5.45, and we decline to consider it.

**21.** As to plaintiffs' remaining theory of false imprisonment, generally a person can be liable for false imprisonment for instigating the imprisonment of another person falsely, even if the person does not participate physically or directly in the confinement. William Prosser, *Torts*, 52 (5th ed 1984) states:

"One who participates in an unlawful arrest, or procures or instigates the making of one without proper authority, will be liable for the consequences; but the defendant must have taken some active part in bringing about the unlawful arrest itself, by some 'affirmative direction, persuasion, request or voluntary participation.' There is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment, or for identifying plaintiff as the person wanted, or requesting a proper arrest when an officer makes an improper one instead, or swearing to a complaint before a magistrate who turns out not to have jurisdiction." (Footnotes omitted.)

---

[12] In *Higgins v. Redding*, 34 Or App 1029, 580 P2d 580, *rev den* 284 Or 80 (1978), we held that a county that accepted the custody of a prisoner based on an arrest warrant valid on its face was not liable for false imprisonment because it released the plaintiff as soon as it was directed to do so by the defendant judge.

*See also Pearson v. Galvin*, 253 Or 331, 454 P2d 638 (1969) (evidence that the defendant falsely reported his airplane stolen to state police, knowing that the report could reasonably result in the arrest of the plaintiff, could subject the defendant to liability for false imprisonment); *Knight v. Baker*, 117 Or 492, 244 P 543 (1926) (holding an Indian agent liable for false imprisonment because he instigated the detention of the plaintiff for 17 days without bringing a charge against him).

When defendants moved for directed verdicts at trial on the false imprisonment claim, plaintiffs' counsel narrowly framed the issue for the trial court. He told the court that the issue was controlled by whether the affidavit submitted by Finnerty to the issuing magistrate contained averments that supported probable cause for the issuance of the warrant once the allegedly false statements were excised from the affidavit. He said:

> "The issue for this court is simply to determine whether, absent an intentional or reckless misleading of [the magistrate who issued the warrant], there would have been a finding of probable cause to search and seize the persons of these plaintiffs."

The trial court concurred, stating, "[T]he crux of the case is the affidavit. If it stands [as excised], this case is over. If it doesn't stand, it goes on."

We undertake the same analysis on appeal urged by plaintiffs below. The averments in the affidavit challenged by plaintiffs as false include (1) the averment that plaintiffs purchased real property from Elizabeth Burris, when in fact, they had purchased the property from the Elizabeth Burris trust; (2) the averment that plaintiffs had engaged in "significant real estate transactions" with Burris, when in fact there was only a single transaction; (3) the averment that the affiant (Finnerty) had reviewed the power records of comparable residences to reach a conclusion that the power usage of the property to be searched was double the ordinary usage when, in fact, he relied on aerial surveillances of other residences to determine whether they were comparable without knowing their actual square footage or other characteristics that commented on their power usage; and (4) the averment that

Byron had a "dangerous" felony conviction when, in fact, his conviction was for felony possession of marijuana. As plaintiffs urged below, we excise those averments from the affidavit and consider whether a neutral and detached magistrate could conclude, based on the remaining facts and circumstances in the affidavit, that there was probable cause to believe that a search would discover the things specified in the affidavit in the place requested to be searched. *State v. Pelster/Boyer*, 172 Or App 596, 600, 21 P3d 106, *rev den* 332 Or 632 (2001). Probable cause to search exists when a reasonable person would believe that it is more likely than not that the objects of the search will be found at the location to be searched. *State v. Anspach*, 298 Or 375, 380, 692 P2d 602 (1994).

As excised, the 17-page, single-spaced affidavit contains the following averments: (1) multiple informants had named occupants and visitors of the house as "big time" marijuana and cocaine dealers and users, and had connected occupants of the house with other, already charged drug criminals; (2) Burris was the sister of a well-known drug dealer; (3) several times, there had been automatic weapon fire coming from the residence; (4) there was "wet" marijuana material, indicating the *growing* of marijuana, found in the garbage from the property *on four different occasions*, and that, in the affiant's experience, "wet" marijuana indicates that marijuana is being grown on the premises as distinguished from dried marijuana which a consumer would possess; (5) pieces of paper in the garbage contained notations of numbers consistent with common prices of marijuana; (6) there had been a land transaction between occupants of the property for significantly less than fair market value; (7) mail and other personal documents addressed to plaintiffs were found in the same bags of garbage of the residence that contained the wet marijuana; and (8) there were two large rooms in the main residence, unobservable from the outside, that could provide a place to grow marijuana.

We conclude that the above facts would cause a reasonable person to believe that it is more likely than not that controlled substances would be found on the property. In particular, the presence of "wet" marijuana material on four

different occasions and of the pieces of paper containing notations that appeared to be drug prices in the garbage from the property corroborates the information of the informants and provide probable cause. Moreover, documents identifying plaintiffs as occupants were found in the same garbage. Consequently, we agree with the trial court that the remaining averments in the affidavit, when considered in their totality, give rise to probable cause for the issuance of the search warrant. In light of plaintiffs' framing of the issue in terms of probable cause, the trial court did not err in directing a verdict for the city on plaintiffs' false imprisonment claims.

█ █ Finally, we turn to plaintiffs' section 1983 claim against Finnerty. After reviewing the applicable federal cases that have considered similar questions, we agree with the following statement of law:

> "A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware*, 328 US 154, 155-56, 98 S Ct 2674, 57 L Ed 2d 667 (1978). This is true whether the alleged falsehood is an affirmative misrepresentation or a material omission.

> "Under *Franks* and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and *(2) that such statements or omissions are material, or necessary, to the finding of probable cause." Sherwood v. Mulvihill*, 113 F3d 396, 399 (3rd Cir 1997) (emphasis added; citations omitted).

In *Sherwood*, the government admitted that the affiants misrepresented the facts stated in their affidavit and that they had acted with knowledge and deliberateness in drafting the affidavit. The court found, therefore, that "the first prong of the *Franks* standard is satisfied as to all of the falsehoods contained in the affidavit." *Id.* at 399. The court said, "We focus, then, on whether any of the affirmatively false statements or omissions are material to the finding of probable cause." *Id.* Ruling that the existence of probable

cause did not depend on the false statements, and they were therefore not "material," *id.* at 402, the court concluded that the "plaintiff ha[d] failed to carry his initial burden of alleging a violation of a constitutional right." *Id.* In light of our holding above that the remaining averments in the affidavit in this case provide probable cause for the issuance of a warrant, we reason similarly. The trial court did not err when it granted a directed verdict on plaintiffs' section 1983 claim against Finnerty because the affidavit, as excised, stated probable cause to search.

 Plaintiffs argue, however, that the question of probable cause in the section 1983 action is a jury issue. We disagree. "Where facts relied upon to show probable cause in a section 1983 action [for false arrest] are controverted, they must be resolved by the jury before controlling legal principles are applied." *Garris v. Rowland,* 678 F2d 1264, 1270, *cert den* 459 US 864 (1982).[13] However, where the facts used in the probable cause determination are those contained in an affidavit, there are no factual questions to resolve. The only issue is a legal one: whether the facts as stated constitute probable cause for the issuance of the warrant. *See, e.g., Sherwood,* 113 F3d at 401.

In summary, the trial court erred in granting summary judgment to the City of Eugene and Lane County on plaintiffs' false imprisonment claims, because false imprisonment is not a legal injury "covered by" workers' compensation law. The trial court otherwise correctly ruled regarding the remainder of plaintiffs' claims.

Reversed and remanded for trial on the false imprisonment claims against the City of Eugene and Lane County; otherwise affirmed.

---

[13] *See also BCR Transport Co., Inc. v. Fontaine,* 727 F2d 7 (1st Cir 1984); *Sherwood v. Mulvihill,* 113 F3d 396 (3rd Cir 1997); *Losch v. Borough of Parkesburg,* 736 F2d 903 (3rd Cir 1984); *Hindman v. City of Paris, Tex.,* 746 F2d 1063 (5th Cir 1984); *Pyles v. Raisor,* 60 F3d 1211 (6th Cir 1995); *Richardson v. City of Dayton,* 948 F2d 1290 (6th Cir 1991); *Brown v. Bowling,* 940 F2d 658 (6th Cir 1991); *Ross v. Meyers,* 883 F2d 486 (6th Cir 1989); *Yancey v. Carroll County,* 876 F2d 1238 (6th Cir 1989); *Schertz v. Waupaca County,* 875 F2d 578 (7th Cir 1989); *Porth v. Farrier,* 934 F2d 154 (8th Cir 1991); *Nix v. Sweeney,* 573 F2d 998 (8th Cir 1978); *McKenzie v. Lamb,* 738 F2d 1005 (9th Cir 1984).