Argued and submitted September 16, 2014, affirmed April 27, petition for review allowed November 3, 2016 (360 Or 568)

Danny BUNDY,
*Plaintiff-Appellant,*

*v.*

NUSTAR GP, LLC;
and Shore Terminals, LLC,
*Defendants-Respondents.*

Multnomah County Circuit Court
110810280; A152918

373 P3d 1141

Carl Post argued the cause and filed the briefs for appellant.

Thomas W. Sondag argued the cause and filed the brief for respondents. With him on the brief was Lane Powell PC.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

HADLOCK, C. J.

## HADLOCK, C. J.

Plaintiff appeals the dismissal of a lawsuit that he brought against defendants after he was exposed to fuel vapors during his employment. We reject without discussion plaintiff's assignments of error two through 10, in which he challenges the trial court's dismissal of his original complaint. We write to address plaintiff's challenge to (1) the trial court's dismissal of his third amended complaint, and (2) the trial court's denial of his motion for leave to file a fourth amended complaint. With respect to the first of those rulings, plaintiff argues that the court erred in granting defendants' dismissal motion because he stated a claim for deliberate intention to injure against defendant NuStar GP LLC, under ORS 656.156(2). With respect to the second ruling, plaintiff contends that the court erred in refusing to allow him to file a fourth amended complaint because that proposed pleading stated claims for negligence against NuStar as permitted by ORS 656.019; he argues further that the trial court's refusal to allow him to assert those claims against NuStar violated his rights under the remedy clause of Article I, section 10, of the Oregon Constitution, as construed by the Supreme Court in *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001). We conclude that the trial court did not err with respect to either ruling, and, accordingly, we affirm.

## I. LEGAL BACKGROUND

To provide context for the procedural history of this case, we begin with a brief overview of the applicable legal concepts. Under the workers' compensation law, "[w]orkers who are injured in the course and scope of employment are entitled to receive certain benefits from their employers, and, with some notable exceptions, those benefits are exclusive of all other remedies that would otherwise be available to the worker." *Hanson v. Versarail Systems, Inc.*, 175 Or App 92, 95, 28 P3d 626 (2001). The exclusive remedy bar is found in ORS 656.018,[1] and is available to an employer to raise

---

[1] ORS 656.018 provides, in part:

"(1)(a) The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out

as a defense to a claim brought against it by an employee. *See Olsen v. Deschutes County*, 204 Or App 7, 21, 126 P3d 1256, *rev den*, 341 Or 80 (2006) (discussing burden on the employer to plead and prove exclusivity bar when raised as an affirmative defense). Thus, "[t]he workers' compensation statutory scheme operates as a substitute for civil claims that an employee could assert against his or her employer in an action at common law and provides liability 'coverage' against the risks that arise from those kinds of claims." *Stone v. Finnerty*, 182 Or App 452, 458, 50 P3d 1179, *adh'd to as modified on recons*, 184 Or App 111, 55 P3d 531 (2002), *rev den*, 335 Or 422 (2003) (emphasis omitted).

Two statutory exceptions to the exclusive remedy bar are at issue in this case. The first of those exceptions is found in ORS 656.156(2), which permits an employee to bring an action against his employer for an injury that is covered by the workers' compensation law if the injury "results to [the] worker from the deliberate intention of the employer of the worker to produce such injury." ORS 656.156(2).[2] The second exception is found in ORS 656.019, which the legislature passed after the Supreme Court issued *Smothers*. That statute permits an employee to bring a negligence action against his employer "for a work-related injury that has

of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions, except as specifically provided otherwise in this chapter.

"* * * * *

"(2) The rights given to a subject worker and the beneficiaries of the subject worker under this chapter for injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment are in lieu of any remedies they might otherwise have for such injuries, diseases, symptom complexes or similar conditions against the worker's employer under ORS 654.305 to 654.336 or other laws, common law or statute, except to the extent the worker is expressly given the right under this chapter to bring suit against the employer of the worker for an injury, disease, symptom complex or similar condition."

[2] ORS 656.156(2) provides, in full:

"If injury or death results to a worker from the deliberate intention of the employer of the worker to produce such injury or death, the worker, the widow, widower, child or dependent of the worker may take under this chapter, and also have cause for action against the employer, as if such statutes had not been passed, for damages over the amount payable under those statutes."

been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury only after an order determining that the claim is not compensable has become final." ORS 656.019(1)(a).

## II.  PROCEDURAL HISTORY OF THIS CASE

With that legal context in place, we turn to the background facts and procedural history of this case. Because this case comes to us from a dismissal of plaintiff's complaint, we assume the truth of all allegations in the pleading and view the allegations, and inferences that may be drawn from the allegations, in the light most favorable to plaintiff, the nonmoving party. *L. H. Morris Electric v. Hyundai Semiconductor*, 187 Or App 32, 35, 66 P3d 509 (2003).

In his original complaint, plaintiff alleged the following background facts that led to his claimed injury. Plaintiff worked as a terminal operator at a terminal operated by his employer, defendant NuStar, and defendant Shore Terminals, LLC. In April 2008, Jordan Technologies personnel inspected the vapor recovery unit (VRU) in the terminal that was located by the truck rack. Jordan Technologies reported that the vent valve was worn or impaired; however, defendants did not repair or replace the valve. On October 10, 2008, problems arose with the same VRU. Jordan Technologies personnel temporarily fixed the unit that day but planned to return on October 13 to permanently fix it.

Plaintiff arrived for work on the night of October 11—before the planned permanent fix of the VRU—and smelled fumes. Around 11:45 p.m., plaintiff noticed stronger fumes and also observed that the VRU had shut down. Plaintiff took a reading of the area and measured combustible gasses at 100 percent of the lower explosive limit (LEL) and 10,000 parts per million (PPM).

About 12:30 a.m., plaintiff contacted his supervisors—the terminal manager, Hudiburgh, and the operations supervisor and former terminal manager, Dungan—to report the problem. Dungan told plaintiff to stop loading trucks, continue taking measurements, and keep the VRU running.

Hudiburgh arrived at the terminal about an hour later and instructed plaintiff to continue taking measurements until about 10:00 a.m. Hudiburgh also instructed plaintiff to load an ethanol truck in the early morning for about 15 minutes, despite the improperly functioning VRU. Because plaintiff was required to monitor the VRU without proper safety equipment, he "inhaled dangerous and potentially deadly amounts of hydrocarbons."

As established by evidence submitted by plaintiff in support of his motion for leave to file a fourth amended complaint, but not alleged in his complaint, plaintiff filed a workers' compensation claim, which was accepted in November 2008 for a nondisabling "exposure to gasoline vapors on 10/12/08." Plaintiff conceded to the trial court that he had received benefits for the accepted condition, but the record does not contain any evidence of what those benefits were. Between February 2009 and September 2010, plaintiff requested that the claim acceptance include the new or omitted conditions of irritant bronchitis and post traumatic stress disorder (PTSD), and to include as consequential conditions somatization disorder and undifferentiated somatoform disorder. NuStar denied each of those four requests. In September 2011, an administrative law judge (ALJ) affirmed the denials, concluding that plaintiff had not established the compensability of irritant bronchitis, under ORS 656.266(1), because his condition was actually tracheitis, had not established that he had PTSD, and had not established that the work incident was a major contributing cause of his somatization disorder and undifferentiated somatoform disorder, under ORS 656.802(2) and (3). The Workers' Compensation Board adopted and affirmed the ALJ's order in March 2012.

Plaintiff also had filed a claim against NuStar and Shore Terminals in federal district court for "intentional harm," based on the workplace incident. The federal court dismissed that case for lack of diversity jurisdiction in February 2011. Plaintiff then filed his original complaint in this action alleging negligence and negligence *per se* claims against both NuStar and Shore Terminals and reasserting his "intentional harm" claim against NuStar. The trial court granted defendants' motion to dismiss plaintiff's

negligence and negligence *per se* claims with prejudice, concluding that they were barred by the statute of limitations and the workers' compensation exclusive remedy bar, ORS 656.018. The trial court also granted NuStar's motion to dismiss, with leave to replead, plaintiff's intentional harm claim for failure to state a claim, ORCP 21 A(8). The court concluded that plaintiff had failed to allege specific facts of the employer's deliberate intention to injure, as required by ORS 656.156(2). Plaintiff filed a second amended complaint, adding allegations for his deliberate-intention-to-injure claim against NuStar. However, the trial court again dismissed that claim for failure to state a claim, with leave to replead, because plaintiff had failed to state ultimate facts that met the requirements for the claim, as discussed in *Hanson*, which would include facts that the actor "was wielding the whole executive power of the corporation."

In his third amended complaint, plaintiff added many new allegations. As relevant, those additional allegations fall into two categories—(1) assertions relating to Dungan's and Hudiburgh's authorization to act on behalf of NuStar and (2) assertions relating to Dungan's, Hudiburgh's, and NuStar's knowledge that requiring employees, including plaintiff, to work without access to required safety equipment of respirators and self-contained breathing apparatuses was certain to cause injury.

As to the first category of allegations—Dungan's and Hudiburgh's authorization to act on NuStar's behalf—plaintiff alleged that (1) Dungan's and Hudiburgh's alleged conduct "was on behalf and for the benefit of" NuStar; (2) "[b]ased on information and belief," NuStar authorized Dungan and Hudiburgh, who were in management positions, to be the decision makers at the terminal, to make policy concerning operations in Oregon, and to speak and act on NuStar's behalf regarding the operations at the Oregon terminal; (3) "[b]ased on information and belief," NuStar approved Dungan and Hudiburgh "requiring [NuStar] employees to work without required safety equipment"; and (4) "[b]ased on information and belief," Dungan's and Hudiburgh's conduct "was done with the authorization of defendant."

As to the second category of allegations—NuStar's knowledge that injury was certain to result—plaintiff alleged that (1) while Dungan was terminal manager, "[b]ased on information and belief, Mr. Dungan did not provide respirators at the direction of [NuStar] because [NuStar] believed they were not necessary"; (2) after Hudiburgh became terminal manager, plaintiff spoke to him about the lack of respirators and self-contained breathing apparatuses; (3) plaintiff and other employees raised safety concerns with Dungan that Dungan would dismiss or reprimand plaintiff for raising; (4) before the incident, Dungan had once told plaintiff after he complained about not having respirators that "the vapors were not bad for him and to do the work"; (5) prior to the incident, Dungan and Hudiburgh "were aware that employees or contractors were not allowed to work in an area if the amount of combustible gases in the air reached 10% of the lower explosive level (LEL)"; (6) Dungan and Hudiburgh "knew that working in an area with such a high concentration of dangerous vapors for such a prolonged period of time was detrimental to Plaintiff's health and was certain to cause Plaintiff injuries"; (7) NuStar "knew that Plaintiff would suffer injury as a result of taking vapor measurements without proper safety equipment, thereby causing Plaintiff to inhale dangerous and potentially deadly amounts of hydrocarbons including benzene"; (8) "[b]ased on information and belief," NuStar knew that its employees, including plaintiff, were not provided required safety equipment and approved of employees being required to work in unsafe conditions without that required equipment, which was certain to cause injury; and (9) "[b]ased on information and belief, [NuStar] deliberately failed to comply with state and federal safety standards, knowing that failure to do so would result in injury to its employees."

NuStar again moved to dismiss plaintiff's deliberate-intention-to-injure claim, which the trial court granted "for the same reasons [it had] in the past," this time with prejudice, because the amended complaint did not cure the defects.

While NuStar's motion to dismiss plaintiff's third amended complaint was pending, plaintiff also filed a motion to allow a fourth amended complaint to reassert negligence

and negligence *per se* claims against NuStar. As explained in more detail below, the basis for plaintiff's motion was his contention that his claims were not barred by ORS 656.018, based on ORS 656.019, because the Workers' Compensation Board had issued an order affirming NuStar's denials of "the compensability of Plaintiff's on the job injuries of Irritant Bronchitis, Post Traumatic Stress Disorder, Somatization Disorder and Undifferentiated Somatoform Disorder claiming that the work-incident was not the major contributing cause of those injuries." The trial court denied plaintiff's motion, concluding that ORS 656.018 barred plaintiff's claims, because "the claim was accepted here, benefits were received." The court also concluded that applying ORS 656.018 to plaintiff's claims did not violate Article I, section 10, as discussed in *Smothers*, because "the record does support that there was an adequate remedy in this case."

As noted, we write to address plaintiff's assignments of error challenging the trial court's dismissal of his third amended complaint (with respect to plaintiff's assertion of a deliberate-intention-to-injure claim against NuStar) and its denial of plaintiff's motion for leave to file a fourth amended complaint to reassert negligence and negligence *per se* claims against NuStar.

## III.  ANALYSIS

### A.  *Deliberate Intention to Injure*

As discussed above, the trial court dismissed plaintiff's third amended complaint for failure to state a deliberate-intention-to-injure claim against NuStar, as permitted by ORS 656.156(2).[3] "We review the grant of a motion

---

[3] NuStar has asserted that the trial court dismissed plaintiff's third amended complaint for both a failure to state a claim, ORCP 21 A(8), and for lack of subject matter jurisdiction, ORCP 21 A(1), both of which grounds NuStar had raised in its motion to dismiss. The transcript, however, does not support NuStar's assertion. The trial court granted NuStar's motion "for the same reasons" the court had twice before granted NuStar's motions to dismiss, which were that plaintiff had failed to allege ultimate facts on which to state a claim. This distinction has significance because "ORCP 21 A(8) decisions on a motion to dismiss for failure to state a claim may not be granted on the basis of anything other than the body of the pleadings themselves." *Rogers v. Valley Bronze of Oregon, Inc.*, 178 Or App 64, 69 n 3, 35 P3d 1102 (2001). In contrast, a court may consider evidence outside the pleadings in deciding a motion to dismiss for lack of subject matter jurisdiction under ORCP 21 A(1). *See* ORCP 21 A ("If, on a motion to dismiss asserting

to dismiss under ORCP 21 for failure to state a claim as a matter of law." *L. H. Morris Electric*, 187 Or App at 35. We assume the truth of all allegations in the pleading and view the allegations and the reasonable inferences that may be drawn from them in the light most favorable to plaintiff. *Id.* However, plaintiff must allege ultimate facts in the pleading and not merely state legal conclusions. *Fearing v. Bucher*, 328 Or 367, 371, 977 P2d 1163 (1999). "An ultimate fact is a fact from which legal conclusions are drawn. A conclusion of law, by contrast, is merely a judgment about a particular set of circumstances and assumes facts that may or may not have been pleaded." *Id.* at 375 n 5.

On appeal, plaintiff makes two separate, but related, arguments. He first argues that he stated a claim for deliberate intention to injure against NuStar based on his allegations of NuStar's direct conduct and knowledge. Alternatively, plaintiff argues that he stated a claim for deliberate intention to injure against NuStar based on his allegations of Dungan's and Hudiburgh's conduct and knowledge because they were acting as NuStar for purposes of that conduct. We address each of those arguments in turn.

### 1. *NuStar's direct conduct and knowledge*

As stated above, ORS 656.156(2) permits an employee to bring a claim against his employer for an injury that is covered by the workers' compensation law if the injury "results to a worker from the deliberate intention of the employer of the worker to produce such injury." In construing that statute to determine the legislature's intent, we give primary weight to the text and context of the provision. *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009). "In reviewing the text and context of a statute, we also look to the cases that have interpreted it." *Hanson*, 175 Or App at 97. ORS 656.156(2) was enacted as part of the original workers'

---

defenses (1) through (7), the facts constituting such defenses do not appear on the face of the pleading and matters outside the pleading *** are presented to the court *** the court may determine the existence or nonexistence of the facts supporting such defense or may defer such determination until further discovery or until trial on the merits."). Accordingly, on review of the trial court's dismissal for failure to state a claim, we are limited to looking at the third amended complaint to determine if plaintiff, as a matter of law, stated a claim for deliberate intention to injure, and do not consider any extrinsic evidence in the record on that issue.

compensation law in 1913, and "the [Supreme Court] has consistently construed the exception narrowly." *Id.* In keeping with that narrow view of the statutory exception, the Supreme Court has construed the words "deliberate intention to produce the injury" to mean that "the worker must show that the employer determined to injure an employee, that is, had a specific intent to injure an employee; that the employer acted on that intent; and that the worker was, in fact, injured as a result of the employer's actions." *Kilminster v. Day Management Corp.*, 323 Or 618, 631, 919 P2d 474 (1996); *see also Bakker v. Baza'r, Inc.*, 275 Or 245, 253, 551 P2d 1269 (1976) ("'[T]he employer must have determined to injure an employee and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross.'" (Quoting *Jenkins v. Carman Mfg. Co.*, 79 Or 448, 155 P 703 (1916).)); *Weis v. Allen*, 147 Or 670, 680, 35 P2d 478 (1934) (construing "deliberate" as "'fully or carefully considering the nature or consequences of an act or measure', 'formed after careful consideration', and 'entered upon after deliberation and with fixed purpose'" (quoting Funk and Wagnall's dictionary)).

Here, plaintiff first argues that he did state a claim under ORS 656.156(2) in his third amended complaint because, based on *Kilminster* and *Lusk v. Monaco Motor Homes, Inc.*, 97 Or App 182, 775 P2d 891 (1989), he alleged facts from which it could be inferred that NuStar directly determined to injure him. For that argument, plaintiff does not rely on the acts or knowledge of his supervisors—Dungan and Hudiburgh—but rather asserts that his allegations of NuStar's direct knowledge and conduct are sufficient. In particular, plaintiff argues that his allegations closely track the allegations in *Kilminster* that the Supreme Court had determined were sufficient to survive a motion to dismiss.

In response, NuStar argues that plaintiff did not allege that NuStar directly had knowledge or engaged in acts from which it could be inferred that NuStar had determined to injure plaintiff. In addition, NuStar asserts that plaintiff's allegations about NuStar that are stated on "information and belief" are inadequate as pure speculation because those allegations are not supported by factual allegations on which plaintiff's belief could be based.

We begin with *Kilminster*, on which plaintiff principally relies. In that case, the plaintiffs were the parents and personal representatives of a person who had died in the scope and course of his employment when he fell while working on a radio tower. The plaintiffs alleged that, (1) before his death, the decedent had complained to his employer about the inadequate equipment he was forced to use when climbing and asked to no longer climb—a request his employer refused, (2) the employer deliberately did not provide required safety equipment or otherwise ensure the safety of its workers, and (3) the employer knew, before the decedent's death, that "if it did not provide the workers in decedent's work location with the requisite safety equipment and training, a worker would fall from the tower and that such a fall would result in serious injury or death." *Kilminster*, 323 Or at 622. The trial court had dismissed the plaintiff's claim for failure to allege facts that met the stringent test for "deliberate intent." *Id.* at 629. The Supreme Court reversed that dismissal.

In reversing the trial court, the court adhered to precedent holding that the worker must show that the employer determined to injure the worker—a reckless disregard of the consequences of an employer's conduct is not enough. *Id.* at 631. The court determined that the plaintiffs had alleged sufficient facts to survive a motion to dismiss because they alleged that "[the employer] *knew* that decedent or someone who did the same work as decedent *would* be injured from a fall from the tower; that [the employer] decided to forgo taking safety procedures, *knowing* that, by so doing, serious injury or death *would* result; and that [the employer] told decedent to climb the tower or lose his job." *Id.* at 632 (emphasis in original). Based on those allegations, the court concluded that a factfinder could reasonably infer from all the alleged circumstances that the employer had determined to injure an employee that did work like the decedent's. *Id.* at 632-33.

Plaintiff also relies on *Lusk*, which we decided before *Kilminster*. In that case, the trial court had granted summary judgment to the defendant employer on the plaintiff's deliberate-intention-to-injure claim, and we reversed. The plaintiff worked for the defendant as a painter of mobile homes. When he spray painted, "[the] plaintiff worked in a

cloud of paint mist and vapors." *Lusk*, 97 Or App at 184. The plaintiff began to get sick from the paint and requested a supplied-air respirator. Months later the defendant brought in a supplied-air respirator for the painters to try, but it refused to buy the system. The plaintiff's condition worsened, and he quit on the advice of his doctors.

In addressing whether the plaintiff had raised a genuine issue of fact on deliberate intention, we emphasized that ORS 656.156(2) requires a showing that the employer deliberately intended to produce the injury—deliberately intending to subject an employee to the *risk* of injury is not enough. *Id.* at 186-88. That is, "[a]n employe[e] does not satisfy those requirements [of ORS 656.156(2)] by showing that the employer refused to provide safety equipment, even if injury is the necessary result of that failure. It is not enough for the employer to act with conscious indifference to whether its actions will produce injury; it must *intend* to produce injury." *Id.* at 188 (emphasis in original). Under the circumstances in *Lusk*, we concluded that a jury could infer that the defendant had failed to provide the respirator because it wished to injure the plaintiff. Those circumstances were: "Defendant knew that the paint was highly toxic and that plaintiff's resulting injury was substantial and continuing; it did not follow the warnings of the paint manufacturer and the urging of its insurer to furnish a supplied-air respirator; plaintiff and his supervisor had complained about the problem repeatedly; and the cost of proper, available equipment * * * was not prohibitive." *Id.* at 189.

Based on *Kilminster* and *Lusk*, plaintiff asserts that his allegations of NuStar's direct conduct were sufficient to survive NuStar's motion to dismiss. We disagree. In the third amended complaint plaintiff made the following allegations of NuStar's direct knowledge and conduct: (1) NuStar knew that the VRU had a worn valve and had malfunctioned on October 10, which Jordan Technologies had temporarily repaired and arranged to permanently repair on October 13; (2) NuStar did not provide respirators because it believed they were not necessary; (3) NuStar "knew that Plaintiff would suffer injury as a result of taking vapor measurements without proper safety equipment,

thereby causing Plaintiff to inhale dangerous and potentially deadly amounts of hydrocarbons including benzene"; (4) "[b]ased on information and belief," NuStar knew that its employees, including plaintiff, were not provided required safety equipment and approved of employees being required to work in unsafe conditions without that required equipment, which was certain to cause injury; and (5) "[b]ased on information and belief, [NuStar] deliberately failed to comply with state and federal safety standards, knowing that failure to do so would result in injury to its employees."

What is missing from plaintiff's allegations are any facts from which a factfinder could reasonably infer that NuStar knew the VRU unit would malfunction again before it was permanently fixed, that, if it did malfunction, an employee would be required to continuously monitor the malfunctioning unit without safety equipment, and that the employee would be injured as a result. Such facts are crucial here, because, unlike in *Kilminster* and *Lusk*, the circumstances that led to plaintiff's alleged injury were not part of his normal work duties; rather, they occurred because of a malfunctioning unit that had been recently repaired and the middle-of-the-night decisions of Hudiburgh and Dungan to have plaintiff take air measurements for a prolonged period without safety equipment. Thus, the allegations listed above—even the allegation that NuStar knew that plaintiff would be injured by inhaling large amounts of hydrocarbons if he took measurements without using safety equipment— are deficient because those allegations have significance only in the context of a malfunctioning VRU, and plaintiff has not alleged that NuStar knew that the October 10 temporary repair would fail or that the VRU would malfunction again on October 11 (or at any other time).

In short, the third amended complaint does not include any allegations from which a factfinder could permissibly infer that NuStar determined to injure an employee. To the contrary, plaintiff alleged that NuStar had taken measures to repair the VRU (although those measures were ineffective) and did not provide respirator safety equipment because it believed that the equipment was not necessary, not because it wished to harm employees. *See also Davis v. United States Employers Council, Inc.*, 147 Or App 164,

174, 934 P2d 1142, *rev den*, 325 Or 368 (1997) (exposing an employee to the certainty of injury is not enough to state a claim under ORS 656.156(2); the employee must show that the employer possessed, at least in part, a motive to injure).

### 2. *Supervisors' conduct and knowledge*

Having rejected plaintiff's argument that he adequately pled a claim against NuStar based on allegations of NuStar's direct deliberate intention, we turn to plaintiff's alternative argument, which is based on the knowledge and conduct of his supervisors, Dungan and Hudiburgh. The issue that we must resolve is whether plaintiff adequately pleaded facts showing that Dungan's and Hudiburgh's conduct and knowledge can be imputed to NuStar.

We begin with *Bakker* and *Hanson*, which frame the legal landscape in which plaintiff makes his argument.[4] In *Bakker*, the Supreme Court concluded that the employee in that case could not rely on the employer's subsequent ratification of the tortious conduct of her coworker to form the basis of an intentional tort claim against the employer. The court reasoned that it could not be said that the employee's injury could have resulted from a subsequent ratification of past conduct, nor could that ratification be said to evidence a deliberate intention on the part of the employer to "produce" her injury, in the words of the statute. *Bakker*, 275 Or at 254.

Building off of that principle in *Bakker*, in *Hanson*, we concluded that ORS 656.156(2) does not permit the use of *respondeat superior* to attribute a coworker's intent to the employer. *Hanson*, 175 Or App at 98. We explained that the underlying rationale of *respondeat superior*, "whereby an employer is held vicariously liable for certain injuries caused by an employee," is that the employer is better able to absorb and distribute the risk than the innocent injured plaintiff, which is not based on the idea that the employer has committed a "morally wrongful act."[5] *Id.* at 100-01 (citing *Farris v.*

---

[4] In so doing, we decline plaintiff's invitation to us to reconsider *Hanson*, and we adhere to our reasoning in that case.

[5] "Under the doctrine of *respondeat superior*, an employer is liable for an employee's torts when the employee acts within the scope of employment. Negligence or

*U.S. Fidelity & Guaranty*, 273 Or 628, 636-37, 542 P2d 1031 (1975)). That rationale differs from the rationale underlying ORS 656.156(2), which includes an element of moral culpability of the employer such that the employer should not be able to rely on the workers' compensation exclusivity bar. *Id.*; *see also Jenkins*, 79 Or at 453 (deliberate intention to injure requires "design and malignity of heart"). We did not express any opinion in *Hanson* on whether the employee's supervisor in that case could be deemed the "employer" for purposes of direct liability under ORS 656.156(2). That issue, which we did not reach in *Hanson*, is the issue that we must now address.

On that point, plaintiff argues that he has alleged facts from which it can be reasonably inferred that his supervisors' intentions reflect the deliberate intention of NuStar, based on *Harris v. Pameco Corp.*, 170 Or App 164, 12 P3d 524 (2000), and *Palmer v. Bi-Mart Company*, 92 Or App 470, 758 P2d 888 (1988). Plaintiff argues that "Dungan and Hudiburgh were [p]laintiff's supervisors, ran the local plant, and were acting on behalf of defendant NuStar when [plaintiff] was injured. While performing the acts alleged, Dungan * * * and Hudiburgh * * * were acting as defendant NuStar. Therefore, their actions were for the direct benefit of defendant NuStar and must be imputed to defendant NuStar."

NuStar argues that, for Dungan's and Hudiburgh's intention to be attributed to NuStar, plaintiff had to allege facts from which it could be inferred that they exercised "the whole executive power" of NuStar, citing *Walthers v. Gossett*, 148 Or App 548, 941 P2d 575 (1997) (discussing the requirements for direct liability of a corporation for an intentional tort). NuStar asserts that plaintiff has not done so and that plaintiff, at most, has pleaded allegations from which it can be inferred only that NuStar is vicariously liable for Dungan's and Hudiburgh's acts, a theory that we rejected in *Hanson*. NuStar also repeats its arguments that plaintiff's allegations stated on "information and belief" are inadequate as pure speculation, which includes all the allegations

---

other tortious conduct by the *employer* is not required." *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988) (emphasis in original; citation omitted).

to which plaintiff points that would allow an inference that Dungan and Hudiburgh were NuStar for purposes of NuStar's Oregon operations.

We start with *Harris* and *Palmer*, on which plaintiff relies. Plaintiff's reliance on *Harris* is misplaced. In that case, our conclusion that the plaintiff could assert intentional tort claims against his employer was based solely on a vicarious liability theory. *Harris*, 170 Or App at 173. We did not discuss ORS 656.156(2) and did not address whether a vicarious-liability theory could support a contention that the employer had a "deliberate intention" to injure the worker for purposes of that statute (a proposition that we later rejected in *Hanson*).

In *Palmer*, which did involve a deliberate-intention-to-injure claim under ORS 656.156(2), we reversed a grant of summary judgment to the defendant employer. The plaintiff was a pharmacy clerk for the defendant and was subject to harassment from her supervisor. The plaintiff informed the defendant about the harassment, but the defendant did not remedy the situation. After several months, the plaintiff took leave due to the harassment. *Palmer*, 92 Or App at 472. We concluded that the plaintiff raised an issue of fact supporting her claim, because, in contrast to *Bakker*, the "plaintiff alleges that [the defendant] failed to stop a continuing course of intentional conduct aimed specifically at [the] plaintiff after being informed of it. If proven, that is sufficient to permit a jury to find that the supervisor's actions reflect the deliberate intent[ion] of the employer." *Id.* at 476. Thus, in that case, we concluded that an employer's ratification of *ongoing* intentionally harmful conduct by a supervisor directed at a particular employee could support a claim under ORS 656.156(2) against an employer. Here, however, plaintiff does not allege any such ratification by NuStar of ongoing intentionally harmful conduct that Dungan and Hudiburgh were directing at plaintiff. Thus, the cases relied on by plaintiff do not assist us in answering the question raised here.

NuStar, for its part, argues that we should apply the same test to ORS 656.156(2) as we do to determine if

a plaintiff has stated a claim for direct liability against a corporation for a common-law intentional tort. We first discussed that test in *Walthers*. In that case, the plaintiff alleged that she was sexually abused by her orthodontist, who practiced as the sole shareholder and officer of a professional corporation. Subsequently, the orthodontist sold his practice to another doctor who changed the corporation's name. The plaintiff brought intentional tort claims against both the orthodontist and the renamed corporation. *Walthers*, 148 Or App at 550.

In deciding whether the plaintiff could bring an intentional tort claim directly against the corporation, we turned to *Bingham v. Lipman*, 40 Or 363, 67 P 98 (1901), and *Lake Shore & M.S. Railway Co. v. Prentice*, 147 US 101, 13 S Ct 261, 37 L Ed 97 (1893). In *Bingham*, the Supreme Court concluded that punitive damages, which required a showing of actual malice, could be imposed against the corporation in that case based on the acts of the corporation's managing agents, reasoning that

> "where it is sought to charge a corporation with exemplary damages on account of the malicious acts of its subordinate agents, there can be no room for controversy that where, as in this case, the officers actually wielding the whole executive power of the corporation participated in and directed all that was planned and done, their malicious, wanton, or oppressive intent may be treated as the intent of the corporation itself, for which it is liable to answer in exemplary damages."

*Bingham*, 40 Or at 371. That reasoning was, in turn, based on a principle described in *Denver & R G Railway Co. v. Harris*, 122 US 597, 7 S Ct 1286, 30 L Ed 1146 (1887), which the United States Supreme Court further explained in *Lake Shore*:

> "The president and general manager, or, in his absence, the vice president in his place, actually wielding the whole executive power of the corporation, may well be treated as so far representing the corporation and identified with it, that any wanton, malicious, or oppressive intent of his, in doing any wrongful acts in behalf of the corporation to the injury of others, may be treated as the intent of the corporation itself[.]"

*Lake Shore*, 147 US at 114 (quoted in *Walthers*, 148 Or App at 556).

Based on those two cases, we concluded in *Walthers* that "a corporation can be directly liable for intentional torts where: (1) the tort is committed by a person or persons wielding 'the whole executive power of the corporation'; and (2) the tortious acts were committed 'in behalf of the corporation.'" *Walthers*, 148 Or App at 556. We then affirmed the trial court's dismissal of the plaintiff's intentional tort claims against the corporation because, although the orthodontist wielded the whole executive power, the plaintiff had not alleged that he was acting on the corporation's behalf when he abused the plaintiff. *Id.* at 557.

Because ORS 656.156(2) requires a showing of the direct deliberate intention of the employer, which here is a corporation, NuStar argues that the test announced in *Walthers*—for determining the direct liability of a corporation for intentionally tortious acts—should apply equally under that statute. We agree. As explained in *Hanson*, the rationale behind the deliberate-intention-to-injure exception is based in the moral culpability of the employer, 175 Or App at 101—that is, the employer cannot both determine to injure an employee and claim it to be a workplace accident covered exclusively under the workers' compensation law. For that rationale to hold, the person who has determined to injure the employee must be a person who can be identified as the corporation, so that the person's intent may properly be imputed to the corporation, just as with a common-law intentional tort.

Applying *Walthers* in the context of ORS 656.156(2) is also in keeping with the majority of other jurisdictions that have confronted the issue under similar deliberate-intention-to-injure exceptions to their workers' compensation exclusivity bar. *See, e.g., Eichstadt v. Frisch's Restaurants*, 879 NE2d 1207, 1210, 1210 n 3 (Ind App 2008) (listing state decisions that follow Indiana's approach of imputing tortious intent to corporate employer where either "(1) the corporation is the tortfeasor's alter ego or (2) the corporation has substituted its will for that of the individual who committed the tortious acts"); *Schatz v. York Steak House Systems, Inc.*,

51 Md App 494, 496-97, 444 A2d 1045, 1047 (1982) (following majority of jurisdictions that "have held that absent express authorization by the employer, the agent must be the 'alter ego' of the employer in order for his intentional misconduct to be attributed to the employer"). *Accord* Lex K. Larson, 6 *Larson's Workers' Compensation Law*, § 103.06[2] (Matthew Bender rev. ed., 2014) ("When the person who intentionally injures the employee is not the employer in person nor a person who is the alter ego of the corporation, but merely a foreman, supervisor or manager, both the legal and the moral reasons for permitting a common-law suit against the employer collapse and a majority of modern cases bar a damage suit against the employer."); *see also Bakker*, 275 Or at 254 n 7 (citing previous version of *Larson's Workers' Compensation Law* for same proposition); *Hanson*, 175 Or App at 101 n 7 (citing *Walthers* and 6 *Larson's Workers' Compensation Law* § 103.07 (2000) for the proposition that a limited group of persons can be regarded as the corporate employer, negating the plaintiff's argument that, without application of *respondeat superior*, ORS 656.156(2) will have no application to corporate employers).

Turning to plaintiff's allegations, plaintiff argues that he has sufficiently alleged facts under *Walthers* because he alleged that Dungan and Hudiburgh were the corporation for purposes of its Oregon operations. Whether or not a person wielding power over only the Oregon portion of a corporation's operations is sufficient is a question for another day. Here, plaintiff has not alleged sufficient facts for a factfinder to reasonably infer that either Dungan or Hudiburgh wielded the corporate power of NuStar even in Oregon.

Plaintiff has not alleged any ultimate facts regarding the actual duties and discretionary authority of Dungan or Hudiburgh—for example, the third amended complaint contains no allegations whether either of them had the authority to hire, fire, or promote employees, or what their duties entailed—nor did plaintiff allege any facts regarding Dungan's or Hudiburgh's role in the corporate structure beyond their respective titles of "operations supervisor" and "terminal manager." The only allegations that support plaintiff's argument are the broad, conclusory statements

that, "upon information and belief," NuStar authorized Dungan and Hudiburgh to act as NuStar in Oregon and gave them control to make policy and run the Oregon terminal. However, those broad, conclusory allegations are insufficient for two reasons. First, they do not constitute ultimate *facts* that a defendant could counter, but are so general in nature that they amount to little more than legal conclusions. *Cf. Davis v. Tyee Industries, Inc.*, 295 Or 467, 476, 668 P2d 1186 (1983) (to plead "ultimate facts," a party must plead a "fairly specific description of facts"); *id.* at 479 (a party may not simply plead a theory of recovery which might, later, be supported by "any state of facts"). Second, to the extent that the allegations can be read to incorporate factual assertions, those assertions conflict with other, more specific factual allegations that plaintiff also included in the complaint. Those allegations are that NuStar directed Dungan, when he was terminal manager, to not obtain respirators for the Oregon terminal (despite Dungan promising employees that he would), that NuStar demoted Dungan to operations supervisor before the incident with the VRU, that Hudiburgh had been the terminal manager for only 10 days before the incident, and that Dungan and Hudiburgh "*were aware* that employees or contractors were *not allowed* to work in an area if the amount of combustible gases in the air reached [even] 10% of the lower explosive level (LEL)." (Emphases added.) Those allegations do not support an inference that Dungan and Hudiburgh directed NuStar's workplace policy in Oregon; if anything, they support only a contrary inference. The mere fact that Dungan and Hudiburgh held managerial positions with NuStar is insufficient under *Walthers*. Plaintiff was required to allege ultimate facts from which it could be reasonably inferred that Dungan and Hudiburgh wielded the corporate power in Oregon—that is, that they personally held discretionary authority to determine and direct corporate policy independent of corporate approval or direction—such that it can be said that their intent reflected the deliberate intention of NuStar. Plaintiff failed to do so. *See Bernards v. Summit Real Estate Management, Inc.*, 229 Or App 357, 368, 213 P3d 1 (2009) (a complaint must allege ultimate facts from which the required conclusions are "*inferable*, not merely a possibility"; an "inferable conclusion is more than a

suspicion, a suggestion, a speculation, or a conjecture; a conclusion is inferable from facts if the conclusion can be logically deduced from the facts" (emphasis in original)). Accordingly, we affirm the trial court's dismissal of plaintiff's third amended complaint.

## B. *Negligence Claims*

Plaintiff also assigns error to the trial court's denial of his motion for leave to file a fourth amended complaint, which would have reasserted negligence and negligence *per se* claims against NuStar. The trial court denied that motion because it concluded that, as a matter of law, plaintiff's negligence claims were not cognizable under ORS 656.019— that is, those claims were barred by ORS 656.018—and that applying the workers' compensation exclusive remedy bar to plaintiff's claims did not violate Article I, section 10, as construed in *Smothers*. We review that conclusion for legal error. *Cowan v. Nordyke*, 232 Or App 384, 386, 222 P3d 1093 (2009), *rev den*, 348 Or 114 (2010).[6]

On appeal, plaintiff argues that he was permitted to bring his negligence claims under ORS 656.019 and that if ORS 656.018 precludes him from bringing those claims that bar violates his right to a remedy under Article I, section 10, as explained in *Smothers*.[7]

We begin with plaintiff's statutory argument. Under ORS 656.019(1)(a), "[a]n injured worker may pursue a civil negligence action for a work-related injury that has been determined to be not compensable because the worker has

---

[6] "'Although we generally review a court's denial of a motion to amend only for abuse of discretion, when the denial results from a substantive legal conclusion, we review the correctness of that conclusion' for errors of law." *Cowan*, 232 Or App at 386 (quoting *Wallace v. Hinkle Northwest, Inc.*, 79 Or App 177, 179, 717 P2d 1280 (1986)).

[7] Plaintiff also asserts in his reply brief that we may not consider the evidence he submitted to the trial court in support of his motion to amend his complaint, and that, instead, we may consider only the allegations he alleged in his proposed fourth amended complaint to determine if he stated a claim under ORS 656.019 or Article I, section 10. We reject that argument. Plaintiff was the party that submitted the evidence for the trial court to consider in support of his own motion, and he did not raise any objections below as to how the trial court should view that evidence. Plaintiff cannot now complain for the first time on appeal that his own evidence should not be considered because NuStar points to that evidence in responding to plaintiff's arguments.

failed to establish that a work-related incident was the major contributing cause of the worker's injury only after an order determining that the claim is not compensable has become final." Plaintiff asserts that his negligence claims—which seek damages for his denied omitted conditions of irritant bronchitis and PTSD and consequential conditions of somatization disorder and undifferentiated somatoform disorder—are permitted under ORS 656.019 because he is seeking to bring claims for denied *injuries*, as that term is used in the statute, and not for a denied workers' compensation *claim*. Thus, plaintiff's position is premised on a construction of ORS 656.019 that would allow a worker to bring a negligence action for any particular claimed condition that is determined noncompensable under the workers' compensation law, even if the worker's claim for the work-related incident has been accepted and benefits paid.[8]

We reject plaintiff's proffered construction of ORS 656.019 because it does not comport with the plain text of the statute, which provides that a worker may bring a negligence action under ORS 656.019 "only after an order determining that *the claim* is not compensable has become final." (Emphasis added.) That unambiguous text does not leave room for plaintiff's construction of the statute. Plaintiff conceded below that his workers' compensation claim was accepted and that he received benefits for his accepted condition. Thus, the trial court correctly concluded that plaintiff could not bring his negligence claims based on ORS 656.019.

Because plaintiff's negligence claims are not permitted under the exception to the exclusive remedy bar found in ORS 656.019, we turn to his constitutional argument. The remedy clause of Article I, section 10, provides that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." In *Smothers*, the Oregon Supreme Court articulated a two-step, case-by-case,

---

[8] We emphasize that plaintiff has confined his argument on appeal to asserting that he can bring his negligence claims because the board denied compensation for certain *injuries* he claimed he suffered as a result of the workplace incident. That is, plaintiff argues for an injury-by-injury analysis under ORS 656.019. Plaintiff has not asserted that his denied conditions were part of, or should have been treated as, a separately denied workers' compensation *claim* that should be analyzed under ORS 656.019 separately from his accepted claim.

inquiry for analyzing claims brought under the remedy clause:

"[I]n analyzing a claim under the remedy clause, the first question is whether the plaintiff has alleged an injury to one of the absolute rights that Article I, section 10 protects. Stated differently, when the drafters wrote the Oregon Constitution in 1857, did the common law of Oregon recognize a cause of action for the alleged injury? If the answer to that question is yes, and if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury."

332 Or at 124. In that case, the court then analyzed whether application of ORS 656.018 can violate Article I, section 10, as specific to that statute:

"The first inquiry is whether a workers' compensation claim alleges an injury to an 'absolute' common-law right that the remedy clause protects. If it does, and the claim is accepted and the worker receives benefits provided by the workers' compensation statutes, then the worker cannot complain that he or she has been deprived of a remedial process for seeking redress for injury to a right that the remedy clause protects. Neither can the worker complain that he or she has been deprived of a remedial process if a compensation claim is denied because the worker is unable to prove that the work-related incident was a contributing cause of the alleged injury, which is what a plaintiff would have had to prove in a common-law cause of action for negligence. However, if a workers' compensation claim for an alleged injury to a right that is protected by the remedy clause is denied because the worker has failed to prove that the work-related incident was the major, rather than merely a contributing, cause of the injury, then the exclusive remedy provisions of ORS 656.018 (1995) are unconstitutional under the remedy clause, because they leave the worker with no process through which to seek redress for an injury for which a cause of action existed at common law."

*Smothers*, 332 Or at 135.

Here, plaintiff's argument, in full, is that he received no remedy for his denied conditions and that, as explained

in *Smothers*, "a person has a right to a remedy for all injuries sustained as a result of an accident, not just those which the employer's insurer decides to accept." Also, plaintiff argues that, because NuStar did not prove that his remedy was "substantial"—that is, constitutionally adequate under the second inquiry for Article I, section 10, claims—he must be permitted to bring his claims.

We reject the first premise of plaintiff's argument—that, simply because he was denied workers' compensation benefits for certain conditions, although his claim was accepted, he received no remedy under Article I, section 10—because it is foreclosed by our opinion in *Stone*. In *Stone*, we explained that Article I, section 10, "is concerned with the availability of a remedy for a 'legal injury.'" 182 Or App at 463. "A 'legal injury' at common law is any harm or wrong to absolute rights for which a cause of action existed. The words 'legal injury' refer to the gravamen of a claim and not to the kinds of injuries or damages for which a plaintiff seeks recompense." *Id.* at 457-58 (citation omitted). One of the plaintiffs in *Stone*, Byron, sought to bring a civil action for the nonphysical elements of his claimed damages, after obtaining workers' compensation benefits for only the physical elements of his damages. We rejected the plaintiff's arguments based on *Smothers*, reasoning:

> "Plaintiffs' attempt to reason that Byron is deprived of an available remedy because the workers' compensation law does not provide coverage for his other alleged harms runs afoul of the understanding that Article I, section 10, focuses on substantial remedies for types of 'legal injuries' rather than on the types of physical, mental or other harms suffered."

*Id.* at 464. Similarly, here, plaintiff cannot complain that he was denied a remedial process under Article I, section 10, simply because he was denied compensation for certain types of harms suffered, when his claim for his legal injury was accepted and benefits paid.

However, *Stone* does not necessarily foreclose plaintiff's additional argument. In *Stone*, the plaintiff had not raised the issue that the workers' compensation benefits he did receive did not afford him a "substantial remedy"; he only

argued that he received no remedy at all—an argument we rejected. *Id.* at 463 n 10. Here, plaintiff alternatively asserts that his remedy was not substantial because there is no evidence in the record of the amount of the benefits he received. In plaintiff's view, it was NuStar's burden to prove that the benefits he received were a substantial remedy, under *Olsen*, which NuStar did not meet, and that, thus, he must be allowed to assert his negligence claims against NuStar.

In making his argument, however, plaintiff confuses the procedural posture in which we must address plaintiff's argument in this case. In *Olsen*, the defendant had brought a motion to dismiss the plaintiff's complaint based on its affirmative defense that the plaintiff's claims were barred by the workers' compensation exclusive remedy bar. 204 Or App at 17. We concluded that, on the face of the pleadings, the plaintiff had stated a claim against the defendant, but that the pleadings did not establish the merit of the defendant's affirmative defense under the facts of the case—"that is, that [the] plaintiff would receive an adequate remedy within the workers' compensation system." *Id.* at 21. Thus, we concluded that the trial court did not err in denying the defendant's motion to dismiss.

Here, in contrast to *Olsen*, we must confront this issue on appeal from the trial court's denial of plaintiff's motion for leave to file a fourth amended complaint, which—in the absence of underlying legal error—we review for an abuse of discretion. *Cowan*, 232 Or App at 386. In his fourth amended complaint, plaintiff sought to reassert the same negligence and negligence *per se* claims that the trial court had previously dismissed with prejudice as both untimely and barred by ORS 656.018. That posture placed an initial burden on plaintiff to explain to the trial court why his claims now did have colorable merit—that is, why the exclusive remedy bar no longer applied to his claims, after conceding that he had received workers' compensation benefits for his accepted claim. Plaintiff did not do that. Instead, in his briefing to the trial court, plaintiff asserted that his remedy was inadequate under Article I, section 10, only because he received no remedy for his denied conditions at all—an argument that, as we have already explained, is foreclosed by *Stone*. Plaintiff belatedly raised an argument

at the end of the hearing in the trial court—which he now reasserts on appeal—that NuStar was required to present evidence of the dollar amount of benefits plaintiff received. At a minimum, that argument came too late. Under those circumstances, we cannot say that the trial court abused its discretion in denying plaintiff's motion for leave to amend. Accordingly, we affirm.

In sum, we affirm the trial court's dismissal of plaintiff's third amended complaint because plaintiff failed to allege ultimate facts from which it could be permissibly inferred that NuStar deliberately intended to injure him. We also affirm the trial court's denial of plaintiff's motion for leave to file a fourth amended complaint because the trial court did not commit legal error nor abuse its discretion given the factual and procedural circumstances of this case.

Affirmed.