282 December 29, 2017 No. 67

IN THE SUPREME COURT OF THE
STATE OF OREGON

Danny BUNDY,
*Petitioner on Review,*

*v.*

NUSTAR GP, LLC;
and Shore Terminals, LLC,
*Respondents on Review.*

(CC 110810280; CA A152918; SC S064188)

On review from the Court of Appeals.*

Argued and submitted May 08, 2017.

Carl Post, Portland, argued the cause and filed the briefs for the petitioner on review.

Thomas W. Songdag, Lane Powell PC, Portland, argued the cause and filed the brief for the respondents on review.

James S. Coon, Thomas Coon Newton & Frost, Portland, filed the brief *amicus curiae* Oregon Trial Lawyers Association.

David L. Runner, Salem, filed the brief *amicus curiae* SAIF Corporation, Timber Products Company and BDI Staffing.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Nakamoto, Flynn, and Duncan, Justices.**

FLYNN, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

\* Appeal from Multnomah County Circuit Court Christopher J. Marshall, Judge. 277 Or 785, 373 P3d 1141 (2016)

\*\* Brewer, J., retired June 30, 2017, and did not participate in the decision of this case.

**FLYNN, J.**

This case arises out of plaintiff's attempt to allege civil negligence claims against his employer, defendant NuStar GP, LLC, for harm arising out of plaintiff's exposure to gasoline vapors at work.[1] The trial court denied plaintiff's motion to amend his complaint to allege those claims after concluding that the claims are barred by the so-called "exclusive remedy" provision of the Workers' Compensation Law, ORS 656.018, a provision that generally immunizes employers from civil liability for injuries to a worker arising out of the worker's employment.[2] Plaintiff contends that his negligence claims are not barred by ORS 656.018 because they are allowed by ORS 656.019, a statute that governs negligence actions for an injury "that has been determined to be not compensable [under the Workers' Compensation Law] because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury." Although plaintiff alleged that he suffers from medical conditions that were determined to be "not compensable" under that major contributing cause standard, the trial court and Court of Appeals concluded that ORS 656.019 does not apply to plaintiff's negligence action because the conditions on which plaintiff relies were denied after defendant accepted a compensable workers' compensation claim for plaintiff's initial condition arising out of the same workplace incident.

We allowed review to consider whether the Court of Appeals correctly construed the scope of ORS 656.019, and we conclude that "the claim" to which ORS 656.019 refers includes subsequent claims. In responsive briefing in this court, defendant suggests for the first time that it disputes the premise that underlies plaintiff's argument, contending that, regardless of the scope of ORS 656.019, the statute does not confer a "substantive right" but merely establishes

---

[1] Although plaintiff has designated defendant Shore Terminals, LLC as an additional respondent on review, only NuStar GP, LLC, is named as defendant in the negligence claims that are at issue on review. Our references to "defendant" throughout the opinion are, thus, references to defendant NuStar GP, LLC.

[2] Unless otherwise noted, all statutory references are to the 2011 version of the Oregon Revised Statutes. There have been no amendments to the pertinent language.

procedural requirements for filing actions that are otherwise exempt from the exclusive remedy provision. That contention is beyond the scope of the statutory construction ruling that we allowed review to consider, and we expressly reserve a ruling on the issue for a future appeal in which the briefing provides the court with fully developed arguments on the issue.

## BACKGROUND

While employed by defendant as a terminal operator, plaintiff was assigned to stay and monitor the air quality from malfunctioning machinery without being given safety equipment, and he was exposed to dangerous levels of diesel, gasoline and ethanol fumes. After that incident, defendant initially accepted a workers' compensation claim for "non-disabling exposure to gasoline vapors."[3] Later, plaintiff asked defendant to accept and pay compensation for additional conditions arising out of the same incident, including "somatization disorder" and "undifferentiated somatoform disorder" (which we refer to collectively as "somatoform disorders"). Defendant specified that it was treating each of plaintiff's subsequent requests as a "consequential condition claim" and was denying those claims on the basis that plaintiff's work exposure was not the major contributing cause of the subsequent conditions. Plaintiff challenged those denials through the workers' compensation system, but he was unable to establish that the work incident was the major contributing cause of his somatoform disorders. The Workers' Compensation Board ultimately issued a final order determining that the disorders were not compensable conditions because plaintiff failed to establish that his work-related incident was the major contributing cause.

In the meantime, plaintiff also filed this civil action against defendant in which he attempted to allege a claim for relief that would come within an exception to the immunity afforded by the exclusive remedy provision. To that end,

---

[3] We are ultimately asked to decide whether plaintiff's allegations state a negligence claim for which relief is available, so we accept as true the facts that plaintiff has alleged. *Philibert v. Kluser*, 360 Or 698, 700, 385 P3d 1038 (2016). We also describe additional facts that are undisputed and were set out in exhibits that plaintiff attached in support of his motion to amend.

plaintiff filed multiple amended complaints, each of which defendant successfully moved to dismiss. When defendant moved to dismiss plaintiff's Third Amended Complaint, plaintiff sought leave to file a Fourth Amended Complaint to allege that he had received the board order described above.[4] Plaintiff argued that the board's determination brought his civil negligence claims within the scope of ORS 656.019 and, therefore, precluded defendant from relying on the exclusive remedy provision to defeat plaintiff's negligence claims. Defendant did not dispute plaintiff's premise that claims within the scope of ORS 656.019 are statutorily exempt from the exclusive remedy provision, but it contended that ORS 656.019 does not apply when the injured worker has an accepted workers' compensation claim.

The trial court agreed with defendant that plaintiff's allegations—including the negligence claims that he proposed to plead in a fourth amended complaint—failed to state a claim for relief that could avoid the exclusive remedy provision of ORS 656.018. In the Court of Appeals, plaintiff assigned error to several rulings of the trial court, including the court's ruling that ORS 656.019 does not allow plaintiff to bring his civil negligence claims.[5] Plaintiff argued that ORS 656.019 is not limited to "entire claims" and, instead, applies to any claim for an injurious condition that is determined to be not compensable under workers' compensation law on the basis that the worker failed to establish that a work-related incident was the major contributing cause. Thus, plaintiff argued, ORS 656.019 applied to his somatoform conditions. The Court of Appeals rejected that argument, emphasizing that ORS 656.019 provides that the injured worker may pursue the action "'only after an order determining that *the claim* is not compensable has become final.'" *Bundy v.*

---

[4] Plaintiff's proposed Fourth Amended Complaint alleged that numerous injuries were determined by the order to be not compensable and did not specify that he was seeking damages only for the somatoform disorders. In this court, however, plaintiff contends that he is relying on ORS 656.019 only to pursue a negligence action for damages related to the somatoform disorders.

5 Plaintiff also argued in the Court of Appeals that his allegations stated a claim for intentional injury and that he has a constitutional right to bring his negligence action. *Bundy v. NuStar GP, LLC*, 277 Or App 785, 786, 373 P3d 1141 (2016). The Court of Appeals rejected both arguments, and plaintiff has not challenged those determinations on review.

*NuStar GP, LLC*, 277 Or App 785, 806, 373 P3d 1141 (2016) (quoting ORS 656.019; emphasis in original). Because plaintiff conceded that defendant accepted plaintiff's initial claim for the work-related incident, the Court of Appeals agreed with the trial court that "plaintiff could not bring his negligence claims based on ORS 656.019."

## DISCUSSION

On review, plaintiff urges this court to conclude that the Court of Appeals and trial court misconstrued the scope of ORS 656.019.[6] Plaintiff relies on the first sentence of ORS 656.019(1)(a), which provides:

> "An injured worker may pursue a civil negligence action for a work-related injury that has been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury only after an order determining that the claim is not compensable has become final."

Defendant responds that there is one workers' compensation claim for any given work incident, which is either accepted or denied entirely, and that the Court of Appeals correctly construed ORS 656.019 as applying only when that initial claim is denied.

## A. *Historical Context for ORS 656.019*

We begin by describing the historical context out of which ORS 656.019 arose, because that context is significant to the issue of statutory construction that we address. Since inception, the workers' compensation laws have contained a provision specifying that benefits for work-related injuries are "in lieu of" other claims against the employer.[7]

---

[6] Plaintiff does not contend that he had a right to file a Fourth Amended Complaint. *See* ORCP 23A (providing that "[a] pleading may be amended by a party once as a matter of course," subject to certain exceptions but "[o]therwise *** only by leave of court or by written consent of the adverse party"). However, the trial court denied his motion to amend entirely on the basis of its construction of ORS 656.019, and we review that determination for legal error. *See Alfieri v. Solomon*, 358 Or 383, 391, 365 P3d 99 (2015) (explaining that, even when a decision is a matter of discretion for the trial court, "where a court's exercise of discretion turns on a legal question, such as the meaning of a statute, we review that determination as a matter of law").

[7] When the workers' compensation system was initially enacted, participation was "not compulsory"; an employer was "free to accept the provisions of the

Or Laws 1913, ch 112, § 12. When the workers' compensation laws were recodified in 1965, that provision was set out at ORS 656.018, which specified that a complying employer "is relieved of all other liability for *compensable* injuries," except as specifically provided otherwise. ORS 656.018 (1965) (emphasis added). In 1995, however, the legislature amended ORS 656.018 to provide that the exclusive remedy provision would apply to all work-related injuries "whether or not they are determined to be compensable under this chapter." Or Laws 1995, ch 332, § 5.[8] That expansion of the exclusive remedy provision created a category of injury for which the workers' compensation laws barred a civil negligence action but did not provide compensation benefits in exchange.

Initially, the legislature made the expansion of the exclusive remedy provision temporary, providing in the same 1995 law that the new language would be deleted from ORS 656.018 on December 31, 2000 (metaphorically, a "sunset" of the expanded exclusive remedy). Or Laws 1995, ch 332, §§ 5a, 66. The legislature later postponed that sunset date in 1999 as part of a compromise package of amendments to the workers' compensation laws. Or Laws 1999, ch 6, §§ 1, 4, 5.

In the meantime, at least one injured worker was challenging the expanded exclusive-remedy bar as a violation of the right to a remedy that is guaranteed by Article I, section 10, of the Oregon Constitution, at least when applied to certain work-related injuries for which the workers' compensation laws provided no compensation. *Smothers v. Gresham Transfer, Inc.*, 149 Or App 49, 53, 941 P2d 1065 (1997), *rev'd*, 332 Or 83, 23 P3d 333 (2001). This court was considering *Smothers* at the same time that the 2001 legislature began hearings on another comprehensive package of amendments to the workers' compensation laws, including

---

act or to reject them as he may see fit," and an employee elected at the time of employment "whether or not he will come under the terms of the act." *Evanhoff v. State Indus. Acc. Com.*, 78 Or 503, 517, 518, 154 P 106 (1915) (describing Or Laws 1913, ch 112, § 12).

[8] Oregon Laws 1995, chapter 332, section 5, added that language in a new paragraph (6) to ORS 656.018. The language is identical to the current ORS 656.018(7).

an amendment that would make the expansion of ORS 656.018 permanent. SB 485 (2001); Senate Journal, Regular Session, SB 485, S-94 (2001). After that 2001 bill passed out of the assigned Senate committee, and five days before the bill was taken up by the House of Representatives, this court issued a decision in *Smothers* that ruled in favor of the injured worker. *See Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), *overruled by Horton v. OHSU*, 359 Or 168, 376 P3d 998 (2016); Minutes, Senate Business, Labor & Economic Development Committee, Mar 14, 2001, 2; Minutes, House Business, Labor & Consumer Affairs Committee, May 15, 2001, 5.[9]

The worker in *Smothers* had sought to bring a negligence action for injuries that he suffered at work, after the injuries were determined to be not compensable under the workers' compensation laws for the reason that the worker "could not prove that the work exposure was the major contributing cause of his injuries." 332 Or at 135. This court held that applying the exclusive remedy provision to bar that worker's negligence action would unconstitutionally deny him the right to a remedy guaranteed by Article I, section 10, of the Oregon Constitution.[10] *Id.* at 135-36. In the wake of *Smothers*, the 2001 legislature approved three amendments to the pending workers' compensation bill, one of which became ORS 656.019. Minutes, House Rules, Redistricting and Public Affairs Committee, June 18, 2001, 5; Tape Recording, Third Reading to the House, SB 485, July 4, 2001, Tape 234, Side B; Tape Recording, Senate Floor Proceedings, SB 485, July 5, 2001, Tape 277, Side A (Senate concurred in House amendments and repassed bill.). That historical context is a significant focus of defendant's arguments.

---

[9] SB 485 passed through two House committees before being passed to the floor. On May 24, 2001, the House Speaker ordered the measure referred from the House Business, Labor & Consumer Affairs Committee to the House Rules, Redistricting and Public Affairs Committee "[w]ithout recommendation as to passage." Senate Journal, Regular Session, SB 485, S-94 (2001).

[10] This court in *Horton* overruled the construction of the remedy clause on which *Smothers* relied. 359 Or at 218. But *Horton* did not specifically overrule *Smothers*' ultimate holding that injured workers who "receive no compensation benefits" have a constitutional right to pursue a civil action for their injury. *See Smothers*, 332 Or at 125.

B.   *The Scope of ORS 656.019*

The parties' dispute regarding the scope of ORS 656.019 turns on the meaning of the first sentence of the statute:

> "An injured worker may pursue a civil negligence action for a work-related injury that has been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury only after an order determining that the claim is not compensable has become final."

ORS 656.019(1)(a). As we have emphasized, under the appropriate methodology for interpreting a statute, the first step is to examine the statutory text and context. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009).

From plaintiff's perspective, a plain reading of the text of ORS 656.019 describes requirements that he has satisfied: each of his two somatoform disorders, for which he is pursuing a civil negligence action, is "a work-related injury"; the conditions have "been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause"; and he received a final "order determining that the claim [for each condition] is not compensable." Although defendant argues that plaintiff cannot satisfy the requirement of a final "order determining that *the claim* is not compensable," we conclude that plaintiff's construction is more consistent with the text and context of the statute than defendant's construction.

1.   *"The claim."*

We begin with the statutory language that the Court of Appeals viewed as dispositive: "the claim." Plaintiff argues that the workers' compensation law defines the term "claim" expansively to mean any

> "written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge."

ORS 656.005(6). Under that definition, plaintiff contends, a single work-place incident can give rise to multiple individual "claims." He argues that the legislature intended the

expansive definition of "claim" when it used the term in ORS 656.019.

Our review of the workers' compensation laws reveals multiple examples of the use of the term "claim" in the expansive sense described by plaintiff—as including subsequent requests for compensation that are filed after the employer has accepted as compensable an initial claim for a work-related incident. For example, ORS 656.273, provides than an injured worker must "file a *claim* for aggravation" if, after the last award of compensation, the worker experiences a worsened condition. (Emphasis added.) The workers' compensation laws also use the term "claim" to describe the process that workers must follow "[t]o initiate omitted medical condition *claims* \* \* \* or new medical condition *claims*," for additional conditions that are "related to an initially accepted claim." ORS 656.267(1), (2)(a); ORS 656.262(7)(a) (emphasis added).

Defendant argues, however, that the workers' compensation statutes also use the term "claim" to refer to the aggregate of all requests for compensation that relate to an initial claim for a work-related incident. Defendant argues that ORS 656.019, similarly, applies only when "the claim" that is determined to be not compensable is the initial claim that the injured worker files after the work-related incident. Defendant is correct that the workers' compensation laws sometimes seem to use the term "claim" in that more limited sense. For example, an injured worker must give written notice to the employer within 90 days after "an accident resulting in an injury." ORS 656.265(1). The notice of accident resulting in injury is treated as a "claim" that the employer must accept or deny within 60 days. ORS 656.262(6)(a). The procedures for "claim closure" seem to use the term "claim" to refer to the aggregate of all compensable conditions that relate to the initial claim for a work-place incident. Those procedures specify that the insurer "shall close the worker's claim" when the worker "has become medically stationary and there is sufficient information to determine permanent disability." ORS 656.268(1). Once an insurer determines that "the claim qualifies for claim closure," the insurer must issue "an updated notice of acceptance that specifies which

conditions are compensable," and, "[i]f a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition." ORS 656.262(7)(c).

It, thus, appears that the workers' compensation laws sometimes use the term "claim" in the expansive sense suggested by the definition that the legislature has given to the term in ORS 656.005(6) and sometimes use the term in the more limited sense that refers to all requests for compensation that relate to the initial claim for injury arising out of a single work-related incident. To determine which meaning the legislature intended for the term "claim" in ORS 656.019, we turn first to the context of the surrounding words in that statute.

2.  *"A work related injury that has been determined to be not compensable"*

As a threshold matter, we observe that, grammatically, "*the* claim" that must be the subject of a final "order determining that the claim is not compensable" refers back to the injury that is described at the beginning of the sentence as "not compensable": "a work-related injury that has been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury[.]" ORS 656.019. Plaintiff contends that the phrase "work-related injury" is generally an expansive term that includes each separate condition that arises out of a work-related incident and that the use of that term in ORS 656.019 provides context for "the claim" to which the statute refers. We agree.[11]

We have observed that "an 'injury' can refer to an incident that causes or results in harm, or it can refer to the harm itself." *Brown v. SAIF*, 361 Or 241, 254, 391 P3d 773 (2017). We also observed in *Brown* that examples of both uses of the term "injury" can be identified in the workers' compensation laws, so that the meaning of the term in a

---

[11] Although defendant does not specifically dispute that each of claimant's conditions is a "work-related injury," we specifically address that question because,"[i]n construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

particular provision must be determined by considering the relevant statutory context. *Id.* at 253-54. In *Brown*, we concluded that the statute at issue, ORS 656.005(7)(a), used the term "injury" in a way that suggested a reference to "a medical condition that is the *result* of an accidental incident" rather than to the incident itself. *Id.* at 255 (emphasis in original).

In ORS 656.019(1)(a), the legislature has also used the term "injury" in a way that suggests a reference to medical conditions. The statute specifies that it applies to "a work-related *injury* that has been determined to be not compensable because the worker has failed to establish that a work-related *incident* was the major contributing cause of the worker's *injury*." ORS 656.019(1)(a) (emphasis added). That sentence has meaning only if the "work-related *injury*" is something distinct from the "work-related *incident*." We, thus, conclude that the term "work-related injury" in ORS 656.019(1)(a) refers to a medical condition that is the result of a work-related incident. That plaintiff's medical conditions are an "injury" within the meaning of ORS 656.019(1)(a) suggests that his claim for those work-related injuries falls within the statute's reference to "an order determining that the claim is not compensable."

### 3. *Statutory context*

The context provided by related statutes also suggests that the legislature used "the claim" in ORS 656.019 in the expansive sense that encompasses subsequent requests for compensation that are denied after an initial claim has been accepted. The language that is codified at ORS 656.019 was part of a bill that more comprehensively modified the workers' compensation laws. SB 485 (2001); Or Laws 2001, ch 865. In other language added by the same bill, the legislature repeatedly used the term "initial claim" when it intended a meaning different from "claims" in the expansive sense that includes a subsequent request for compensation. *See* Or Laws 2001, ch 865, § 1 (amending definition of a "preexisting condition," in ORS 656.005(24)(a), to distinguish between the meaning of that term as used "[i]n claims for an initial injury or omitted condition" and in "claims for a new medical condition"); *id.* at § 3 (providing

for different calculation of disability benefits if worker provided notice of employment in multiple jobs "within 30 days of receipt of the initial claim"); *id.* at § 10 (specifying that "[c]laims properly initiated for new medical conditions and omitted medical conditions related to an initially accepted claim shall be processed pursuant to ORS 656.262"); *id.* at § 14 (addressing payment for medical services "in response to an initial claim for a work-related injury"). Given those repeated references to an "initial claim" elsewhere in SB 485, the legislature's failure to qualify the term "claim" in that way in ORS 656.019 strongly suggests that it did not intend the term "claim" to refer to only an "initial claim." *See Northwest Natural Gas Co. v. City of Gresham,* 359 Or 309, 323, 374 P3d 829 (2016) ("[I]f the legislature uses *different* terms in related statutes, it likely intended them to have different meanings." (Emphasis in original.)).

Nevertheless, defendant contends that the context of preexisting case law demonstrates that ORS 656.019 applies only when an initial claim for compensation is denied on major contributing cause grounds. Defendant argues that the legislature's use of the term "claim" in ORS 656.019 was necessarily informed by this court's earlier discussion of claims in *Johnson v. Spectra Physics*, 303 Or 49, 733 P2d 1367 (1987), which described multiple conditions arising out of single work incident as "aspects of a single claim." *Id.* at 56. According to defendant, the "legislature, consistent with *Johnson*, understood that new and omitted condition 'claims' * * * remained *a part of* that initial claim." (Emphasis in original.)

However, the point of *Johnson* is that each injury or condition is considered on its separate merits and, thus, that the insurer's acceptance of the claimant's back injury claim did not preclude it from denying compensability of a carpal tunnel syndrome condition that was diagnosed after the claimant filed her initial claim. *Id.* at 58-59. Indeed, the opinion specifically refers to the claimant's subsequent request for compensation for her carpal tunnel syndrome as a "claim" that the insurer was required to accept or deny within "60 days after the claim was filed." *Id*. at 59. *Johnson* thus adds nothing to the inquiry beyond illustrating that

our case law has also used the term "claim" in varying ways, to refer to both separate requests for compensation and to the aggregate of all requests arising out of the same work-related incident. Moreover, *Johnson* predates the statutory amendments in 2001, in which the legislature authorized employers to deny "new or omitted" conditions after previously accepting a claim for other conditions arising out of the same work incident. ORS 656.267; Or Laws 2001, ch 865, § 10. In doing so, the legislature specifically identified those requests to accept new and omitted medical conditions as "claims." *Id.* That is the more pertinent statutory context.

### 4. *Legislative history*

Finally, defendant argues that the legislative history demonstrates that the legislature intended ORS 656.019 to address only the initial claim for injury arising out of a work-related incident. As indicated above, the provision that became ORS 656.019 was added to an existing package of amendments to the workers' compensation laws, SB 485, after this court held in *Smothers* that ORS 656.018 cannot constitutionally be applied to bar certain negligence actions. According to defendant, the legislative history demonstrates that the legislature intended ORS 656.019 to reach only those actions that *Smothers* made exempt from the exclusive-remedy bar. The plaintiff in *Smothers* filed his negligence action after his employer denied the initial (and only) workers' compensation claim that the plaintiff filed for injury arising out of the work-related incident, and the opinion emphasizes that the court was addressing the category of injured workers who "receive no compensation benefits." 332 Or at 125. Defendant argues that the legislature intended ORS 656.019 to apply only to the circumstances described in *Smothers*—an *initial* claim that is determined to be not compensable.

Defendant is correct that the legislative history reveals an intention to capture and limit the kind of civil actions that the legislature believed *Smothers* would allow. *See* Tape Recording, House Floor Proceedings, SB 485, July 4, 2001, Tape 234, Side B (statement of Representative Carl Wilson) (explaining that "[t]he bill will not, quote

unquote, fix *Smothers*, but it does create a means for addressing this new and significant exposure for employers," in part because it would "lessen the impact of that decision" by "shielding all parties from the extra cost of having to pursue both the workers' compensation claim and court case at the same time," through the exhaustion requirement); *see also* Tape Recording, Senate Floor Proceedings, SB 485, July 5, 2001, Tape 277, Side A (statement of Senator Roger Beyer) (testifying that SB 485 "should keep more cases out of the court system").

It is not clear, however, that the legislature intended to address those concerns by restricting the scope of ORS 656.019 to the factual circumstances of *Smothers*. A key proponent of SB 485 advised one of the House committees considering the bill that "there are important questions that are left unanswered by the *Smothers* decision," including whether its rationale would "apply to subsequent denials such as partials, aggravations and new conditions." Testimony, House Committee on Rules, Redistricting, and Public Affairs, SB 485, June 15, 2001, Ex D at 2 (statement of John Shilts, Administrator, Workers' Compensation Division, Department of Consumer and Business Services (DCBS)). Shilts emphasized that the bill "provides a means to address *** [those] questions." *Id.; see also* Tape Recording, House Committee on Rules, Redistricting and Public Affairs, SB 485A, June 15, 2001, Tape 150, Side A (statement of Tim Nesbitt, president of Oregon AFL-CIO) (explaining that there was "still a lot of uncertainty about how the [workers' compensation] world will look *** under *Smothers*," and that the amendments would help to address those questions). The uncertainty whether *Smothers* might permit actions for injuries that were the subject of a subsequent claim denial and Shilts' emphasis that the bill "provides a means to address *** [those] questions" suggest that the legislature may have intended to make the procedural limitations of ORS 656.019 applicable to that broader category of "claims."[12]

---

[12] Although Shilts and Nesbitt were witnesses, rather than legislators who voted for the bill, their statements to legislators regarding the potential impact of *Smothers*, inform our understanding of the type of actions that the legislature may have intended to reach in order to "lessen the impact" of *Smothers*. *See*

Ultimately, the significance of the legislative history is that it does not disclose a clear intent to limit the reach of ORS 656.109 to initial workers' compensation claims. We have emphasized that the best evidence of what the legislature intended a statute to mean is the wording of the statute that it adopted into law. *See Brown,* 361 Or at 249 (describing essential principle). Here, that best evidence persuades us that the legislature used the terms "work-related injury" and "the claim" in the expansive sense that encompasses claims—like plaintiff's—for a condition that is denied on major-contributing-cause grounds after an initial claim acceptance has been issued. The Court of Appeals erred in construing the statute otherwise.

C. *Defendant's Argument Regarding the Function of ORS 656.019*

In their arguments regarding ORS 656.019 in the trial court and Court of Appeals, both parties assumed that a conclusion that ORS 656.019 applies to subsequent condition claims would mean that plaintiff should have been allowed to file his Fourth Amended Complaint. As indicated above, the first sentence of ORS 656.019(1)(a) provides that

> "[a]n injured worker may pursue a civil negligence action for a work-related injury that has been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury only after an order determining that the claim is not compensable has become final."

Plaintiff—and until now defendant—has assumed that the phrase "may pursue" expresses a grant of authority to pursue actions that fall within the scope of the statutory language. That construction is consistent with the ordinary meaning of the term "may" as "have permission to." *Webster's Third New Int'l Dictionary* 1396 (unabridged ed 2002); *see Gaines*, 346 Or at 166 (A statute providing that a party "'may' offer legislative history to the court" means the party "is statutorily entitled, but not obligated, to offer the court legislative history.").

---

Tape Recording, House Floor Proceedings, SB 485, July 4, 2001, Tape 234, Side B (statement of Representative Carl Wilson).

In its respondent's brief in this court, however, defendant questions that assumption. Defendant argues that the verb "may" should be understood as modified by the final clause of the sentence, so that it expresses a single proposition. Defendant excerpts the text to illustrate that way of reading the statute: "An injured worker may pursue a civil negligence action *** *only* after an order determining that the claim is not compensable has become final." (Emphasis in original.) According to defendant, the statute read in that way merely explains "*when* an assumed right may be exercised" without additionally creating the right. (Emphasis in original.)

Defendant's interpretation of the phrase is also plausible. Although a statute providing that a person "may pursue" a particular action "*only* after" a particular event can imply that the legislature is also providing a right to pursue the action after the particular event, the two propositions are not logically equivalent.[13] Imposing procedural limitations on a particular type of action may simply mean that the legislature understood some external authority to already authorize the type of action. Indeed, as explained above, the legislature adopted ORS 656.019 at a time when it understood that *Smothers* made at least some of the actions described in ORS 656.019 constitutionally exempt from the exclusive-remedy bar.

We expressly reserve for another day, however, the comprehensive statutory analysis needed to resolve whether the legislature intended ORS 656.019 to function as a substantive exception to the exclusive remedy provision. We resolve only the single issue of statutory construction that was raised by the petition for review and argued by the parties below—whether ORS 656.019 applies if the negligence action is for injuries that were determined to be not compensable after an initial workers' compensation claim was accepted. Because the parties assumed in the trial court that ORS 656.019 would allow plaintiff to file his Fourth

---

[13] Rephrased as an if-then logical proposition, the statute provides: "if there is not an order, then the worker may not pursue a civil action." That proposition is not logically equivalent to the proposition: "if there is an order, the worker may pursue a civil action." Both statements may be true, but not necessarily so.

Amended Complaint if the statute applied to plaintiff's negligence claims, we reverse the trial courts denial of plaintiff's motion to amend. That limited holding is not intended to preclude these or future parties from properly presenting an argument that the legislature did not intend ORS 656.019 to function as a substantive exception to the exclusive remedy provision.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.